ANTOINETTE C. MORRILL *vs.* WALTER C. MORRILL.

\* First Judicial District, Hartford, May Term, 1910.
HALL, C. J., PRENTICE, THAYER, RORABACK and ROBINSON, Js.

An application to the Superior Court, pursuant to the power conferred upon it by General Statutes, § 4558, to modify an order, embodied in a decree of divorce, respecting the custody of the minor children of the divorced parents, is in no sense an independent proceeding, but one incidental to the original action, full jurisdiction of which having once been acquired, still continues, carrying with it the authority to make any order relating to the care and custody of such children which is not forbidden by some controlling principle of law.

Nor will the removal of the children from this State and their continued residence in a foreign country with the parent to whose custody they were committed when the divorce was granted, oust the Superior Court of its jurisdiction to hear and determine such an application when brought by the other parent.

The welfare of the children is the paramount consideration upon such an application, which is addressed to the discretion of the trial court; and unless such discretion is clearly abused, or so exercised as to violate some legal right or principle, this court cannot interfere.

The fact that the order as modified does not conform to the prayer of the petition or that of the cross-petition, is of no consequence, since the court is bound to take such action as in its judgment the situation requires, irrespective of the claims of either parent.

\* Transferred from third judicial district.

The modified order in the present case required the mother, who had
taken the children to live with her in Germany, to send them annu-
ally to this country, under suitable escort and at her expense, to
visit their father, and charged a like duty upon him in returning
them to her at the conclusion of their visits.  *Held* that these re-
quirements, while perhaps somewhat unusual in view of the great
distances to be traveled to and fro, were not illegal, and did not
disclose any abuse of discretion upon the part of the trial court.

In such proceedings it is competent for the court to prescribe conditions
as to the custody, care and education of the children, which may
involve their absence from this State temporarily, or, for that
matter, during their entire minority.

Inasmuch as orders of this character cease to have any extraterritorial
force at all as soon as the conditions attending their adoption
change, the effect which they can command elsewhere is likely to
prove of more theoretical than practical consequence.

Argued May 10th—decided July 26th, 1910.

APPLICATION by a divorced husband for a modifi-
cation of the original order respecting the custody and
education of the two minor children of the parties,
contained in the decree of divorce, brought to and tried
by the Superior Court in Fairfield County, *Burpee, J.;*
facts found and judgment rendered modifying the orig-
inal order, from which the divorced wife appealed.
*No error.*

Mrs. Von Romberg was formerly the wife of the
petitioner, Walter C. Morrill.   They were married
May 26th, 1900, and thereupon took up their residence
together in New York City, which had theretofore been,
and has since continued to be, the place of his domicil.
Two children, both boys, were born of the union.   The
elder is now about nine years of age, and the younger
about seven and one half.   In May, 1903, the wife sepa-
rated from her husband, and, taking the children with
her, went to reside with her father in Greenwich in
this State.   This situation continued for three years,
when she brought her action for a divorce to the Su-
perior Court in Fairfield county, returnable on the first
Tuesday of June, 1906, charging intolerable cruelty,

and claiming the custody of the children. They were then with her in Greenwich, as they had continued to be. Mr. Morrill appeared. The prayer for a divorce was granted June 22d, 1906, and the judgment contained the following provision, agreed to by the parties: "and the care, custody, and education of said minor children is hereby committed to the plaintiff, but that the defendant may have said children visit him at least six weeks in all during each year, said visits to be divided as to time and into such periods as the defendant may reasonably ask." At that time Mrs. Morrill had no intention of removing the children from the State, or of not conforming her conduct to the terms of the order.

Some time during the following summer Mrs. Morrill, at the petitioner's request, sent the children to visit their father at his then residence. Before this visit was requested Mr. Morrill had learned that Mrs. Morrill intended to go abroad for the benefit of her health, taking the children with her, and to remain abroad with them for a year. To this plan of hers he made no objection, and just before her departure he returned the children to her that she might take them with her. This visit of the children lasted less than two weeks, and was cut short to enable Mrs. Morrill to sail on the day she had selected.

During Mrs. Morrill's absence in Europe she met Maximilian Von Romberg, then and now a German subject, resident in Wiesbaden, and July 13th, 1907, was married to him. She thereupon took up her residence with her husband in Wiesbaden and has ever since resided there. The children have continued with her and her present husband in Wiesbaden, where they were when the petition was brought and now are. It is the intention of Mrs. Von Romberg to retain them there with her, and educate them there until they are

old enough to be sent to an American preparatory school, and subsequently to an American university. There is a strong mutual attachment between her and the children. She devotes a large part of her time to them, and furnishes them a comfortable and attractive home. They are being well and carefully cared for and educated, and are happy and contented. She is in every respect a suitable and competent person to have the custody, care, and education of them, and ought to have it.

Other facts which bear upon the court's exercise of its discretion are set out at length in the finding. As they are not material to a consideration of the legal questions discussed in the opinion and determined, they are omitted.

The judgment of the court upon the petition left the former order unchanged except as modified by the following: "It is therefore ordered and adjudged, that said Antoinette C. Von Romberg, upon the written request of said Walter C. Morrill, bring or send said children, under proper escort, at her own expense, to visit said Walter C. Morrill in any suitable place within the State of Connecticut or the State of New York, for a period of not less than six weeks in all, after July first in each year; that after the expiration of six weeks from the time they are delivered to him, said Walter C. Morrill conduct, or send said children, under proper escort, at his own expense, and cause them to be delivered to said Antoinette C. Von Romberg at her home in Germany, prior to October 1st in each year; that said written request of said Walter C. Morrill that said children be brought or sent to him, be mailed in the City of New York, addressed to said Antoinette C. Von Romberg, at her last known place of residence in Germany, in season to reach her on or before June first in each year in which such request shall be made,

and a copy thereof filed with the Clerk of the Superior Court for Fairfield County."

The petition prayed for a modification of the original order, so that the care, custody, and education of the children should be committed to the petitioner under such conditions and on such terms as the court might deem proper. Mrs. Von Romberg, after a demurrer to her plea to the jurisdiction of the court, filed pursuant to a special appearance for that purpose, had been sustained, filed a cross-petition in which she asked that the custody, care, and education of the children be committed unconditionally to her.

*Henry Stoddard*, with whom was *Henry H. Pierce* of New York, for the appellant (the divorced wife).

*Stiles Judson*, for the appellee (the divorced husband).

PRENTICE, J. The question of first importance upon this appeal is one relating to the court's jurisdiction to entertain the petition, raised primarily by the plea to the jurisdiction which was demurred to. It must be conceded that if the proceeding to which the petitioner has resorted were to be regarded as an original and independent one, the objections urged to the jurisdiction of the court to grant the relief prayed for, under the circumstances disclosed by the record, would be unanswerable. The answer which is made, and well made, is that the petition is in no sense an independent proceeding, but one which is incidental to the action of divorce, and that the court's jurisdiction to entertain it and grant its prayer is one which follows from the jurisdiction acquired in that action.

There can be no question that the Superior Court in Fairfield county had full jurisdiction to render its original judgment granting a divorce and awarding the

custody of the two children of the severed marriage relation to the wife. The plaintiff wife was domiciled in Greenwich, the children had for three years had their home there with her, and the husband appeared and submitted himself fully to the jurisdiction to which he now appeals. It has been held that where jurisdiction to grant a divorce and award the custody of the infant children of the marriage once attaches, that jurisdiction is, in the absence of a statute upon the subject, a continuing one, so that the power of the court to amend, modify, or annul its order of custody, as the welfare of the children under existing conditions may demand, ever after remains. *Hoffman* v. *Hoffman*, 15 Ohio St. 427; *Miner* v. *Miner*, 11 Ill. 43; *Williams* v. *Williams*, 13 Ind. 523. We, however, have no occasion to appeal to such a general principle, since we have a statute upon the subject. It is not framed with that care and precision which ought to mark legislative action. It cannot, however, be doubted that the intention of those who enacted it was to confer upon courts which had jurisdiction of divorce proceedings, a continuing authority, as an incident of the cause, to annul or vary any order as to the custody, care, or education of the minor children of the parties which it might have previously made, and it must be so construed. General Statutes, § 4558.

The petition is to be regarded as an appeal to the court which rendered the divorce judgment and passed the order embodied therein, as to the custody of these children, to modify that order in the exercise of a continuing jurisdiction of the cause to that end. *Lyon* v. *Lyon*, 21 Conn. 185, 192. As such an appeal, full jurisdiction of the cause originally obtained carried with it a continuing jurisdiction to make, as an incident of the cause, any order relating to the care, custody, or education of the children which was not forbidden by some

controlling principle of law. Reasonable notice, as far as feasible, of contemplated action subsequent to the original judgment, might well be required as a measure of fairness, and thus as a practical condition of further action; but that notice was not a condition upon which the jurisdiction of the cause was founded. Once acquired, that continues to the end. *Sherwood* v. *Stevenson*, 25 Conn. 431; *Lyon* v. *Lyon*, 21 id. 185.

This conclusion by no means disposes of the questions presented by the situation before the court, or of the objections which are urged to the court's authority to modify its original order in view of that situation, which discloses the absence of the children from this State when the petition was presented and the order thereon made, and their presence in a foreign country, which had continued for several years. It does, however, furnish a substantial premise for such disposition.

Mrs. Von Romberg, who will be referred to hereinafter as the respondent, contends that the language of the statute, which expresses the sovereign will, must be interpreted as inapplicable to situations where the situs of the child or children is at the time of any modifying action without the confines of the State, or, what is to the same effect, that a limitation to that effect must be read into it. As regards the interpretation of the language of the statute, we must say as the Supreme Court of Maine has said of a similar statute of that State, that we can "find no qualification or restraint of the power given except such as may be imposed by the sound discretion of the justice presiding." *Stetson* v. *Stetson*, 80 Me. 483, 485, 15 Atl. 60.

The contention of the respondent, however, does not rest upon this narrow claim of verbal construction. She goes further, and asserts that although the language of the statute is unlimited in its terms, it must, by the necessity of controlling principles of law, have the above

Morrill *v.* Morrill.

limitation in its application to concrete cases. It is true that in the brief of her counsel the implied limitation for which they contend is not uniformly thus stated. From one passage it would seem that the presence of the children within the State was not regarded as a necessary requisite of the continuing jurisdiction, if one of the parents remained a resident. In other passages other circumstances are referred to in a way to indicate that they were regarded as supplying controlling factors in addition to that of the foreign situs of the children. It is quite apparent, however, that the one factor in the present situation upon which the respondent relies, and must rely, as interposing an insurmountable obstacle in the way of an exercise by the court of a continuing jurisdiction in the premises pursuant to the statute, is that which arises from the fact that the children, whose status forms the subject-matter of its inquiry and prospective adjudication, have for years been and now are in a foreign country at the domicil of their mother and custodian. Other circumstances are immaterial incidents, which add nothing of real importance to the respondent's position. The question presented is therefore one as to the relation of the situs of the children to jurisdiction in judicial proceedings looking to their care, custody, or education, or, more accurately speaking, as to the effect of a foreign situs as denying such jurisdiction in proceedings like the present.

The fundamental legal objection which is made to the exercise of a continuing jurisdiction, when the situs of the children is a foreign one, is that the court is powerless to enforce its orders. We are thus brought to the threshold of a number of interesting inquiries as to the extraterritorial effect of orders concerning the custody of children under the varying conditions which may arise. Among these are questions as to the

extent to which recognition may be claimed for them in the exercise of the comity of nations; as to whether or not they come under the protection of the full-faith and credit-clause of the Federal Constitution, and if so, to what practical effect; as to the effect of legal situs and actual situs as conferring a jurisdiction to make such orders, and the nature of the authority thereby conferred; as to whether or not the factor of national citizenship is one of significance; and as to what are the consequences of a situation such as the present, as preserving within the jurisdiction of the court either a constructive situs, or an equivalent of a situs, of the children, as wards of the court, sufficient to confer upon it a continuing authority for the adoption of proper orders affecting their welfare which will be respected in the exercise of the customary comity between States and nations.

We have no occasion for our present purpose to pursue these subjects. If the conclusions thereon most favorable to the respondent's position were accepted, it would by no means follow that the court was powerless to act upon the petition. The doctrine invoked is one borrowed from private international law, and belongs to that domain. As there applied it has been stated to be that "the sovereign of a country . . . has no right to adjudicate upon any matter with regard to which he cannot give an effective judgment." It is one which imposes limitations upon the action of a sovereign power. It is not one of intraterritorial application. Dicey on Conflict of Laws, 38. There is here no claim that the court exceeded the authority conferred upon it. The respondent's contention thus becomes resolved into one that the sovereign power of Connecticut is necessarily incompetent to authorize its court to take action pursuant to a continuing jurisdiction, once acquired and once exercised, to annul or

modify an order previously passed regulating the status of infants then before it, and which stands upon its records as an adjudication which in the progress of events might be enforcible within the State, and might be sought to be enforced extraterritorially as a matter of comity or otherwise, if their present situs is beyond its limits.

If it be so that the court of a sovereign State will restrain the attempted exercise of the sovereign power when such attempt would necessarily be futile and useless, that situation is not here. The original order created for the children a status which was in its nature temporary. Minor on Conflict of Laws, § 96. If the court which entered it now determines, in the exercise of a continuing authority conferred upon it in terms, to change its judicial declaration defining that status, or to retract its former action, present and future recognition will certainly be given to that determination within this jurisdiction, and the occasion might readily arise when that fact alone would become important. As far as the extraterritorial value of the new action is concerned, that matter will take care of itself under the principles of private international law.

But the inability of a court to enforce its orders and decrees does not result in a lack of jurisdiction from an intraterritorial point of view. The want of jurisdiction, and the want of power to enforce, are two different things, intraterritorially considered. *Hope* v. *Hope*, 4 De G., M. & G. 328, 345; *In re Willoughby*, L. R. 30 Ch. Div. 324, 327; *Haddock* v. *Haddock*, 201 U. S. 562, 26 Sup. Ct. Rep. 525.

With respect to the present proceeding it is also to be borne in mind that it was in response to the respondent's appeal to the Superior Court in Fairfield county, as the court of her domicil, that the custody of these children was awarded to her. The order made in her favor was

in legal effect a conditional one. There was attached to it the condition implied from the statute, of which she was bound to take notice, that the right to annul or vary it for cause, at the will of the court, was reserved. It scarcely lies in her mouth to now question its authority, when invoked by her then husband, whom she summoned to its jurisdiction, to exercise the authority thus reserved, although her voice is heard from without the confines of the State. *Stetson* v. *Stetson,* 80 Me. 483, 485, 15 Atl. 60; *Lessig* v. *Lessig,* 136 Wis. 403, 117 N. W. 792.

It remains to consider the action of the court. The petition was addressed to its discretion, to be exercised with paramount consideration for the welfare of the children. *Kelsey* v. *Green,* 69 Conn. 291, 298, 300, 37 Atl. 679. With the manner in which that discretion was exercised we cannot interfere unless it appears that it involves the violation of some legal principle or right, or a clear abuse of discretion.

The fact that the order made does not conform to the prayer of either the petition or cross-petition furnishes no objection to its validity. It was the court's duty to take such action as in its judgment the situation called for. In the performance of this duty it was unhampered, either in its inquiry or in its decision, by the allegations or prayers of the parents. While they appeared before the court in the outward guise of parties litigant, their position was not that which is ordinarily occupied by parties in actions to determine their rights, and the respondent in urging this objection makes the mistake of attempting to apply the rules of pleading to the proceeding.

In so far as the modified order calls for action on the respondent's part which might be expected to charge her with a financial burden of some magnitude, in that she was required to bear the expense attending

the delivery of the children to their father upon their annual visits to him, we fail to discover in that fact that any legal principle or right was thereby invaded, in view of the relations of the parties and the situation. If the objection to this feature of the order, however, is that it was uncalled for by the circumstances, or improper in point of discretion, then its sole bearing is upon the respondent's general claim, which remains to be hereinafter considered, that the condition attached to the award of custody to Mrs. Von Romberg requiring and regulating the annual visits was one which, in the exercise of a sound discretion, could not have been attached to it.

The modified order directs that upon the occasion of the annual visits the respondent should bring or send the children, under proper escort, to their father at any suitable place within the State of Connecticut or the State of New York, and that he, at the conclusion of the visits, should conduct or send them back, under proper escort, to the mother at her home in Germany. Whatever may be said of the scope and effect of these provisions, certain it is that compliance therewith involves as a necessary consequence the absence of the children from this jurisdiction in the father's possession and under his control, and an approval of their presence under such conditions in the jurisdiction of the father's domicil. The respondent complains of this feature of the order. It is clear that it is within the power of a court in proceedings like the present to prescribe conditions as to the custody, care, or education of children which may involve their absence from the State a portion, or for that matter for all, of the time. Whatever criticism orders of that character may justify is one addressed to them in point of discretion.

It remains to consider that portion of the modified

Morrill *v.* Morrill.

order which requires the annual visits to the father upon his request, and regulates the details of them, to discover if it embodies provisions which the court in the exercise of a sound discretion could not prescribe. The respondent's criticism demands that our consideration be extended to these provisions in their bearing upon the welfare of the children, as imposing upon the mother financial obligations arising from the visits, and as authorizing or directing the possession of the children by the father outside of this State and within the State of his domicil.

In making this inquiry we are bound to bear in mind that the authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and that we are not privileged to usurp that authority or to substitute ourselves for the trial court in its exercise. A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference.

The court's memorandum of decision, embodied in the finding, clearly discloses that the end which it had in view was the welfare of the children. Examining the evidence for the purpose of securing this object, it found that no good reason appeared why the existing order should be revoked or modified except in such a way as might be necessary to accomplish its intention. The modification which was made was framed for the sole purpose of reaching that result, and the finding is to the effect that compliance with the conditions prescribed was consonant with the highest welfare of the children. Doubtless this conclusion is not one which, in view of the remoteness of the present and prospective domicil of the mother and custodian, from that of

the father, and the incidents necessarily attending the passing of the children to and fro, would meet with universal acceptance. But whatever difference of view we or others might entertain, it cannot fairly be said that the result arrived at by the trial court could not be reached reasonably, and that in reaching it the court transgressed the limits of its discretion.

The fact that the respondent was required to bear the expense attending the delivery of the children to the father, is one of minor importance and adds little or nothing to the strength of her position. If the visits were to be prescribed, it was not, in view of all the circumstances and the financial abilities of the parties, an abuse of discretion to impose a portion of the expense involved upon the mother.

The extraterritorial effect of orders of this character and the consequences which might, in view of the law upon that subject, attend compliance with the provisions of the modified order, were matters which deserved careful consideration when they were formulated. The utmost which is asserted for the extraterritorial effect of such orders is that they should, in the exercise of the customary comity of States and nations, be recognized and enforced, and in the States of our Union, by force of the full-faith-and-credit-clause of the Federal Constitution, must be recognized and enforced, so long, and only so long, as the circumstances attending their adoption remain unchanged. Minor on Conflict of Laws, p. 209; 2 Bishop on Marriage & Divorce, § 204; *Woodworth* v. *Spring*, 4 Allen (Mass.) 321, 323; *Hanrahan* v. *Sears*, 72 N. H. 71, 72, 54 Atl. 702; *People ex rel. Allen* v. *Allen*, 40 Hun (N. Y.) 611, 105 N. Y. 628, 11 N. E. 143. As a finding of changed conditions is one easily made when a court is so inclined, and plausible grounds therefor can quite generally be found, it follows that the recognition extraterritorially which custody or-

ders will receive or can command is liable to be more theoretical than of great practical consequence. The pertinence of this legal situation to the promulgation of an order which provides for the extraterritorial presence of the children is apparent. But it does not appear that the trial court did not give due consideration to this aspect of its order. We are bound to assume that it did, and cannot say either that the order itself discloses that it did not, or that such consideration would have forbidden the conditions prescribed in it.

There is no error.

In this opinion the other judges concurred, except RORABACK and ROBINSON, Js., who dissented.