[No. 24005. Department One. July 18, 1932.]

DAISY TREOSTI, *Respondent*, v. JOSEPH TREOSTI, *Appellant*.[1]

*Coleman & Fogarty,* for appellant.

*Wm. A. Johnson* and *Newton & Newton,* for respondent.

HERMAN, J.—During the year 1927, respondent, Daisy Treosti, commenced an action for divorce against appellant, Joseph Treosti. January 19, 1928, the cause was tried. Prior to the trial, the parties en-

[1]Reported in 13 P. (2d) 45.

tered into a separation agreement, whereby they undertook to settle their property rights and attempted to make provision for the care, custody and support of their minor child, Madeline Ruth Treosti. The agreement was approved by the court, and an interlocutory order was entered, which, among other things, provided:

"It is therefore ordered, adjudged and decreed by the court that the plaintiff [respondent] is entitled to a decree of divorce from the defendant [appellant] upon the following ground, to-wit: Cruel treatment of the plaintiff by the defendant.

"It is further ordered, adjudged and decreed that the agreement between the plaintiff and defendant heretofore filed in the above entitled action (Exhibit A) be and the same is hereby approved.

"It is further ordered, adjudged and decreed that the plaintiff shall have the care, custody and control of Madeline Ruth Treosti, minor daughter, until the further order of the court. The defendant shall have the privilege of visiting said child at all reasonable times and to occasionally have her for an hour or two at a time.

"It is further ordered, adjudged and decreed that the defendant shall pay to the plaintiff $25.00 per month for the support and maintenance of said minor child, said payments to begin on the 11th day of January, 1928, and to be made at the First National Bank of Snohomish and to continue so long as the custody of said child remains with plaintiff or plaintiff's mother when plaintiff is working or until said child marries or otherwise becomes self-supporting or until the further order of the court."

The final judgment in the divorce case confirmed and made final the interlocutory decree.

During the year 1928, respondent, without an order of the court, removed Madeline Ruth Treosti from the state of Washington, and has never returned her to this state. By reason of the removal of the infant child

of the parties from this state, appellant has in fact been deprived of the right to visit the child and to occasionally have her for an hour or two at a time. Subsequent to the removal of the child from the state, contempt proceedings were instituted by respondent against appellant for failure to make payments for the support of the child. Those proceedings terminated in an order of dismissal. Thereafter, respondent issued execution upon the final judgment in the divorce case. Appellant moved to quash the execution. The superior court entered an order denying the motion to quash the execution. Appellant has appealed from the order denying the motion to quash the execution.

The decree contains no provision requiring the respondent to remain in this state or to keep the child here. In *State ex rel. Jones v. Superior Court,* 78 Wash. 372, 139 Pac. 42, the minor child had been awarded to the mother, who took it to California and resided there. The father, in the court of original jurisdiction of this state, moved to modify the decree. The case holds that the local court still retained jurisdiction to modify the decree if a proper showing were made. The opinion reads in part as follows:

"Our general statute is not unlike that of the state of Connecticut. In that state, the court has held that jurisdiction conferred upon the courts by the divorce statutes is a continuing authority to vary any order at the suit of either party. The supreme court has said:

" 'It has been held that where jurisdiction to grant a divorce and award the custody of the infant children of the marriage once attaches, that jurisdiction is, in the absence of a statute upon the subject, a continuing one, so that the power of the court to amend, modify, or annul its order of custody, as to the welfare of the children under existing conditions may demand, ever after remains. . . .' *Morrill v. Morrill,* 83 Conn. 479, 77 Atl. 1."

Subsequent to the enactment by the legislature in 1921 of Rem. Comp. Stat., § 995-2, the case of *Lanctot v. Lanctot,* 125 Wash. 310, 216 Pac. 356, reaffirmed the rule announced in *State ex rel. Jones v. Superior Court, supra.*

Appellant made no effort to have the court modify the decree with reference to the provision relative to the care, custody or support of the minor child of the parties. He has moved to quash execution issued by the court on the final judgment in the divorce case. It is his contention that, because respondent took the child from the state without first obtaining leave of court, he has been deprived of his right to visit the child at reasonable times, and therefore he is under no obligation to comply with that provision of the final judgment requiring him to pay twenty-five dollars per month for her support. Appellant does not insist that execution should not issue because the judgment has been paid. The total amount at present due respondent is in excess of $1,200. There is no contention that the judgment in the divorce case was obtained by fraud. The record discloses no jurisdictional defect.

The question before this court is: Can the judgment obtained in the divorce case between the parties hereto be modified or vacated by a motion to quash an execution issued upon that judgment?

In 34 C. J. 511, section 815, it is stated:

"A judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect to its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, except for fraud in its procurement. Even if the judgment is voidable, that is, so irregular or defective that it would be set aside or annulled on a proper direct application for that purpose, it is well settled as a general rule that

it is not subject to collateral impeachment so long as it stands unreversed and in force. On the other hand, a judgment which is absolutely void is entitled to no authority or respect, and therefore may be impeached in collateral proceedings by anyone with whose rights or interests it conflicts. By the weight of authority, whether a judgment is void or voidable is to be determined from an inspection of the record. If the record discloses the jurisdictional defect, the judgment is void; if it does not, the judgment is merely voidable. In some jurisdictions, however, extrinsic evidence is admissible to show the jurisdictional defect. In order to make a judgment subject to collateral attack it must have been rendered by a court without legal organization; or by a court without jurisdiction, either of the person, the subject matter, or to render the particular judgment."

The court said in *Hanna v. Allen*, 153 Wash. 485, 279 Pac. 1098:

"A collateral attack is an attempt to impeach the judgment by matters *de hors* the record in an action other than that in which it was rendered; an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it; any proceeding which is not instituted for the express purpose of annulling, correcting, or modifying such decree."

9 R. C. L. 456 states:

"The general rule that a judgment or decree is not subject to collateral attack for irregularities not affecting the jurisdiction of the court applies in divorce actions, . . ."

The judgment in question does not appear to be void on its face, and there is no showing of fraud in its procurement. The trial court did not err in entering the order denying the motion to quash execution.

Affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and STEINERT, JJ., concur.