[No. 29732. *En Banc.* November 19, 1945.]

THE STATE OF WASHINGTON, *on the Relation of Anita Jiminez, Plaintiff*, v. THE SUPERIOR COURT FOR SPOKANE COUNTY, *Charles W. Greenough and Ralph E. Foley, Judges, Respondents.*[1]

[1] Reported in 163 P. (2d) 610.

*Griffin & Gershon* and *Russell F. Stark,* for relator.

*Harold M. Gleeson,* for respondents.

JEFFERS, J.—This cause comes before the court on the application of relator, Anita Jiminez, for a writ of prohibition to restrain defendants from proceeding further in that certain action in the superior court for Spokane county entitled "Anita Jiminez, Plaintiff, v. Pedro Jiminez, Defendant," being cause No. 113980.

The application specifically asks that Honorable Charles W. Greenough and Honorable Ralph E. Foley be directed to show cause before this court why they should not be absolutely restrained from proceeding further on a certain order entered June 25, 1945, and on a show cause order issued by the superior court for Spokane county on or about July 12, 1945, in the above-mentioned cause.

The application was filed in this court on July 25, 1945, and on the same day an alternative writ was issued by the acting chief justice restraining defendants from proceeding in the action until the further order of this court, and directing defendants to show cause before this court on August 24, 1945, why they should not be restrained absolutely from further proceeding, as prayed for in the application. The alternative writ was served on defendant Greenough July 30, 1945, and upon defendant Foley on July 31, 1945.

On August 24, 1945, counsel for relator Anita Jiminez, appeared and argued the cause before a department of this court. The matter was thereafter set down for hearing before

the entire court on October 15, 1945. On October 13, 1945, defendants appeared herein and filed a brief, and also a transcript of certain parts of the record as made before the superior court for Spokane county.

The following facts appear from the affidavit of relator in support of her application and from the transcript: On May 19, 1945, Honorable Charles W. Greenough made and entered findings of fact, conclusions of law, and an interlocutory order of divorce in the case of Anita Jiminez, Plaintiff, v. Pedro Jiminez, Defendant, by which decree plaintiff was awarded the absolute care, custody, and control of Mary Jo Jiminez, age four years, and Daniel Jiminez, age eighteen months, subject however to the right of visitation by the defendant at all reasonable and proper times and hours until the further order of the court. This order also granted to defendant the privilege from time to time to have Mary Jo Jiminez visit him away from the home of plaintiff.

While the interlocutory order does not specifically state that the two minor children shall be kept and maintained in Spokane county, paragraph 10 of the findings of fact provides:

"That the plaintiff *shall* not remove said children, Mary Jo Jiminez and Daniel Menwell Jiminez, or either of them, from the jurisdiction of this court without further order of the court." (Italics ours.)

Subsequent to May 19, and prior to June 15, 1945, relator, Anita Jiminez, secured employment in Seattle, King county, Washington, to which city she went, taking the two children with her, and where she and the children have since resided.

On June 13, 1945, Honorable Charles W. Greenough, one of the judges of the superior court for Spokane county, issued a show cause order in the Jiminez divorce action, based on the motion of Pedro Jiminez and his affidavit thereto attached, directed to relator, ordering her to appear before the court on June 25, 1945, and show cause why she should not be required to return the minor children to Spokane county and to maintain the children in Spokane county so that defendant, Pedro Jiminez, *might exercise his privilege of visiting with the children at all reasonable times and*

*places as provided by order of the court previously entered.*

This show cause order was served on relator on or about June 15, 1945, and on June 22, 1945, relator interposed a demurrer to the show cause order based upon the following ground:

"That in view of Section 995-2 Remington's Revised Statutes of the State of Washington the Court has no jurisdiction of the person of the defendant [relator] or of the subject matter of the action."

It was the contention of counsel for relator, in support of her demurrer, that the show cause order was a definite proceeding to modify the interlocutory order by providing that henceforth the minor children should be kept and maintained in Spokane county, and that such a proceeding, under Rem. Rev. Stat., § 995-2 [P. P. C. § 23-33], could only be instituted in King county, Washington, where relator and the children were then residing.

On June 25, 1945, Honorable Charles W. Greenough made and entered the following order:

"On this 25th day of June, 1945, this cause came regularly on for hearing by the court on return on order to show cause why plaintiff should not be required to return the children of the parties to Spokane county, and maintain them here and plaintiff appearing by Counsel Sommers in behalf of his motion to stay and by written appearance, and after hearing said matter and the argument of counsel and the court being fully advised in the premises, it is by the court

"ORDERED, That said plaintiff Anita Jiminez be and the same is hereby ordered to forthwith and not later than the 6th day of July, 1945, at 2 o'clock P. M. to return the children of the parties Mary Jo and Daniel Menwell Jiminez to Spokane county, Washington, to maintain them in Spokane county and not remove them therefrom without an order of this court and plaintiffs motions to stay proceedings and to dismiss are denied and demurrer overruled."

On July 12, 1945, Pedro Jiminez applied to the superior court for Spokane county for an order to show cause why relator should not be punished for contempt because of her failure to comply with the order of June 25, 1945, requiring her to return and maintain the minor children of the parties

in Spokane county. The motion of Pedro Jiminez was supported by his affidavit showing that the order of June 25th had not been complied with.

Pursuant to this motion, Honorable Ralph E. Foley, one of the judges of the superior court for Spokane county, on July 12, 1945, issued a show cause order directing relator to appear in the superior court on July 27, 1945, then and there to show cause why she should not be punished for contempt of court by reason of her failure to comply with the order of June 25, 1945.

This matter was before the lower court on the order to show cause why relator should not be punished for contempt of court, which show cause order was issued upon the theory that relator had failed to comply with the order of June 25, 1945; therefore the right to issue the show cause order and punish relator for contempt is dependent upon whether or not the court had jurisdiction to make and enter the order of June 25, 1945. If the court had such jurisdiction, then it needs no citation of authority to hold the court had the power to enforce such order.

It is relator's main contention that the order of June 25, 1945, modified or changed the interlocutory order relative to the care, custody, and maintenance of the minor children, and that in view of Rem. Rev. Stat., § 995-2, the superior court for Spokane county was without jurisdiction to make such an order, for the reason that, at the time the show cause orders were issued and the order of June 25th was made and entered, relator and the two minor children were residing in King county, and the superior court for King county, under the circumstances, was the only court which had jurisdiction to hear and determine a motion or petition for the modification of the interlocutory order, in so far as the care, custody, control, or maintenance of the minor children is concerned.

Rem. Rev. Stat., § 995-2, provides:

"Hereafter every action or proceeding to change or modify any *final order, judgment or decree* heretofore or hereafter made and entered in any divorce action or proceeding in relation to the care, custody or control, or the support

and maintenance, of the minor child or children of the marriage shall be brought in the county where said minor child or children affected are then residing, or in the county where the parent or other person who has the care, custody or control of the said minor child or children affected is then residing." (Italics ours.)

Rem. Rev. Stat., § 995-3 [P. P. C. § 23-35], provides:

*"Upon the filing of a properly verified petition,* to be entitled as in the original divorce action or proceedings, *together with a certified copy of the order, judgment or decree* sought to be changed or modified thereby, the superior court of the county in which said petition is filed shall have full and complete jurisdiction of the cause and shall thereupon order such notice of the hearing of said petition to be given as the court shall determine." (Italics ours.)

Rem. Rev. Stat., § 995-5 [P. P. C. § 23-39], provides:

"Upon a full hearing and termination of said petition the court shall make and enter such order, judgment or decree in said cause as the evidence and the law requires; a certified copy of such order, judgment or decree to be filed and entered in the county wherein said original divorce action or proceeding was had within thirty days thereof."

■ Aside from the possible application of § 995-2, *supra,* which section could only apply to a proceeding wherein it was sought to *"change or modify* any *final order, judgment or decree* heretofore or hereafter made and entered in any divorce action or proceeding in relation to the care, custody, or control, or the support and maintenance of the minor child or children," we are of the opinion the superior court of Spokane county had jurisdiction to make and enter the order of June 25, 1945, on the theory that the order did not in fact change or modify the interlocutory order, but that the order of June 25th was made and entered only for the purpose of requiring relator to carry out the terms of the interlocutory order as entered.

It will be remembered that the interlocutory order did provide that the father should have the right of visitation at all reasonable times and hours, and should have the privilege from time to time of having the older child, Mary Jo, visit him away from relator's home.

There can be no question, we think, but that the court had the power to determine where the minor children should be kept and maintained, to the end that the parent who was given the right of visitation might see and visit the children at reasonable times. We think it apparent that the court, in entering the interlocutory order, had in mind that these minor children should be kept and maintained in Spokane county, in order that the father could exercise the privilege of visiting and seeing his children, and that, in making and entering the order of June 25th, the court did nothing more than make effective the rights and privileges granted to the father by the interlocutory order.

We therefore conclude that the superior court for Spokane county had jurisdiction to make and enter the order of June 25, 1945, and also to hear and determine the question of whether or not relator should be punished for contempt of court because of her failure to comply with such order.

In view of relator's contention that, because of the provisions of Rem. Rev. Stat., § 995-2, the superior court for Spokane county had no jurisdiction to make the order of June 25th, or to hear and determine the question raised by the show cause order, we shall discuss the question of when and under what circumstances § 995-2 becomes applicable.

Rem. Rev. Stat., §§ 995-2, 995-3, and 995-5, were passed by the 1921 legislature, and were a part of chapter 109, Laws of 1921.

Section 2 of chapter 109, p. 332, Laws of 1921, provides in part as follows:

"Pending the action for the divorce, the court, or judge thereof, may make, and by attachment enforce, such orders for the disposition of the persons, property and children of the parties as may be deemed right and proper, and such orders relative to the expenses of such action as will insure to the wife an efficient preparation of her case, and a fair and impartial trial thereof; at the conclusion of the trial the court must make and file findings of fact and conclusions of law. If it determines that no divorce shall be granted final judgment must thereupon be entered accordingly. If, however, the court determines that either party, or both, is entitled to a divorce *an interlocutory order* must be en-

tered accordingly, declaring that the party in whose favor the court decides is entitled to a decree of divorce as hereinafter provided; which order shall also make all necessary provisions as to alimony, costs, care, custody, support and education of children and custody, management and division of property, *which order as to the custody, management and division of property shall be final and conclusive upon the parties subject only to the right of appeal;* but in no case shall such interlocutory order be considered or construed to have the effect of dissolving the marriage of the parties to the action, or of granting a divorce, until *final judgment* is entered; . . . Appeals may be taken from such interlocutory order within 90 days after its entry." (Italics ours.)

The foregoing section became Rem. Comp. Stat., § 988, which was amended by chapter 112, p. 432, Laws of 1933, by adding thereto the following words:

". . . which order [interlocutory order] as to alimony and the care, support and education of children may be modified, altered and revised by the court from time to time as circumstances may require." Rem. Comp. Stat., § 988, as amended, is now Rem. Rev. Stat. (Sup.), § 988.

The first case called to our attention which discusses the effect of § 995-2, *supra*, is *Lanctot v. Lanctot,* 125 Wash. 310, 216 Pac. 356, decided by this court in 1923. In that case, the marriage relation of the parties was apparently dissolved by a final decree of divorce on March 16, 1917, whereby the minor child of the parties was awarded to the wife (plaintiff) and the husband (defendant) was required to pay the sum of fifteen dollars per month for the support of the child. In December, 1922, defendant sought relief from the above decree, in so far as the payments for the support of the minor were concerned, in the court where the decree was rendered. At and before the time defendant made application for a modification of the decree, plaintiff and the minor child were residing in California. The opinion in the cited case states:

"As to the question of the jurisdiction of the superior court for Pierce county over the subject-matter of the defendant's application, apparently the trial judge and counsel for the plaintiff proceeded upon the assumption that the jurisdiction of that court could not be invoked as asked for

202

by the defendant because of the provisions of the following sections, Rem. Comp. Stat., enacted by the legislature in 1921, reading as follows: . . ."

Sections 995-2 and 995-3 are then set out and are the same as Rem. Rev. Stat., §§ 995-2 and 995-3, hereinbefore set out.

The opinion then proceeds:

"If the plaintiff still resided in and had the custody of their minor child in some county of this state other than Pierce county, it may be conceded for present purposes that the defendant would be required to seek relief in the superior court of the county of the residence of the plaintiff. But we cannot bring ourselves to believe that the legislature ever intended that the continuing jurisdiction over such an incidental controversy to the divorce decree as is here involved should be taken away from the superior court granting a divorce decree by this act of 1921, when the party asking relief still retains his residence in the state and the other party has left the state and taken their child from the state."

The opinion further states:

"It is the settled law of this state that the jurisdiction of the court rendering the decree of divorce is continuing as to the custody of children of the parties and as to awarding periodical allowance in favor of one party as against the other. [Citing cases.]

"It is possible that the nature of the interrelated jurisdiction of the several superior courts of this state, under our constitution, is such that the legislature has the power to require a controversy of this nature to be brought and determined in the superior court of the county of the residence of the party moved against, or in the superior court of the county where the child resides; but even if that be so, it seems to us *that this statute was, after all, intended to be simply a changing of the place of trial of questions of this nature,* still recognizing that such questions are to be determined in the divorce action; *that is, in the exercise of the continuing jurisdiction in that action.* This is plainly evidenced by the provisions of § 995-3, Rem. Comp. Stat. . . . above quoted. . . . We are of the opinion that the superior court of Pierce county, under the conditions here shown, had jurisdiction of the subject-matter of the defendant's application." (Italics ours.)

While it is true that in the cited case the mother, to whom the child had been awarded by the divorce decree, and the minor child were outside this state at the time the application to modify the decree was made, yet it seems to us that, in holding that the superior court of Pierce county had jurisdiction to modify the decree, this court must of necessity have concluded that § 995-2 was not intended to, and did not, deprive the superior court of Pierce county of jurisdiction; in other words, that the mere fact that the mother and minor child resided outside of the county in which the decree was rendered did not deprive the court which made and entered the decree of its continuing jurisdiction to modify such decree.

It will be noted that in the cited case, after referring to the continuing jurisdiction of the court, the opinion states: "This is plainly evidenced by the provisions of § 995-3, Rem. Comp. Stat." We shall later again refer to § 995-3, *supra.*

In *Ihler v. Ihler,* 139 Wash. 363, 247 Pac. 8, we held that Rem. Comp. Stat., § 988-1 (Rem. Rev. Stat., § 988-1), which provides that at any time after six months have expired after the interlocutory order, and upon the conclusion of an appeal if taken therefrom, the court, on motion of either party, shall confirm such order and enter a final judgment granting an absolute divorce from which no appeal shall lie, means just what it says, and that no appeal will lie from a final decree of divorce; that Rem. Comp. Stat., § 988 (Rem. Rev. Stat. (Sup.), § 988 [P. P. C. § 23-15]), which provides in part, "appeals may be taken from such interlocutory order within 90 days after its entry," applies to all the provisions of the interlocutory order and not just to that part relative to the custody, management and division of the property.

While it is true that an appeal must be taken from the interlocutory order or any part thereof within ninety days after its entry, and to that extent it might be considered as a final order, yet we are convinced that § 995-2, *supra,* was not intended to, and does not, have any application to an

interlocutory order of divorce, and we think the cases hereinafter cited bear out this conclusion.

In the case of *Treosti v. Treosti*, 168 Wash. 672, 13 P. (2d) 45, we quoted with approval the following statement made in *State ex rel. Jones v. Superior Court*, 78 Wash. 372, 139 Pac. 42:

" 'Our general statute is not unlike that of the state of Connecticut. In that state, the court has held that jurisdiction conferred upon the courts by the divorce statutes is a continuing authority to vary any order at the suit of either party. The supreme court has said:

" ' "It has been held that where jurisdiction to grant a divorce and award the custody of the infant children of the marriage once attaches, that jurisdiction is, in the absence of a statute upon the subject, a continuing one, so that the power of the court to amend, modify, or annul its order of custody, as to the welfare of the children under existing conditions may demand, ever after remains. . . ." *Morrill v. Morrill*, 83 Conn. 479, 77 Atl. 1.' "

After the above citation, the opinion in the *Treosti* case continues:

"Subsequent to the enactment by the legislature in 1921 of Rem. Comp. Stat., § 995-2, the case of *Lanctot v. Lanctot*, 125 Wash. 310, 216 Pac. 356, reaffirmed the rule announced in *State ex rel. Jones v. Superior Court, supra*."

In the case of *State ex rel. Shallenberger v. Superior Court*, 174 Wash. 627, 25 P. (2d) 1041, there will be found a discussion of prior cases and of Rem. Rev. Stat., §§ 995-2, 995-3, and 995-5. We will not attempt to set out the facts in the cited case, but will quote from the opinion relative to the sections of the statute last above referred to:

"The statute, as we read it, does not in any of its provisions take away from the court which entered the decree any of its continuing jurisdiction or in any manner lessen its power to enforce its own judgment. Rem. Rev. Stat., § 995-2, provides that all proceedings to modify such a judgment shall be brought in the county where the minor child or children reside. Rem. Rev. Stat., § 995-3, provides that, *when the statutory steps have been taken [filing of a verified petition entitled in the original divorce action, together with a certified copy of the order, judgment and decree sought to be changed or modified]* the court in which

the petition to modify has been filed, shall have full and complete jurisdiction of the cause. What cause? *Manifestly, the cause set up in the petition to modify, and no other,* because *such a petition presents only the question of the modification as prayed for, and in the absence of statutory language ousting the jurisdiction of the original court, it cannot be inferred or presumed that other courts are given jurisdiction over matters not presented to them.* This view is strengthened by Rem. Rev. Stat., § 995-5, which reads:

" 'Upon a full hearing and determination of said petition the court shall make and enter such order, judgment or decree in said cause as the evidence and the law requires; a certified copy of such order, judgment or decree to be filed and entered in the county wherein said original divorce action or proceeding was had within thirty days thereof.' " (Italics ours.)

We quote further from the cited case, where, after stating the purpose of § 995-2, *supra*, this court said:

"But the legislature has not attempted in any manner to take jurisdiction from the court which entered the decree. To take from a court jurisdiction over a judgment which it lawfully entered, would require a plain, specific, legislative mandate. There being no such mandate here, or even anything of the kind to be inferred, we are clear that *jurisdiction passed to the King county court only of those matters which were taken to it by the petition for modification.*" (Italics ours.)

The petitions to modify in the cited case were apparently directed against the final decree of divorce and not the interlocutory order.

We are convinced, from a study of §§ 995-2 and 995-3, *supra*, and the case last cited, that a court in a county other than the one in which a decree of divorce is entered acquires no jurisdiction to hear and determine a petition to modify or change such decree in relation to the care, custody, or control, or the support and maintenance of minor children, until a petition is filed in such court in accordance with the provisions of § 995-3, and then only as to the particular matters set up in the petition. In other words, the mere fact that the parent who was awarded the care, custody, and control of the minor child or children

resides in a county other than the one where the interlocutory order or the final decree of divorce was entered does not, *ipso facto,* deprive the court which made and entered such order or decree of the right in a proper case to modify or change such order or decree as to the care, custody, or control, or the support and maintenance of the minor.

*State ex rel. Ranken v. Superior Court,* 6 Wn. (2d) 90, 106 P. (2d) 1082, discusses Rem. 1915 Code, § 988, and also the amendments of 1921 and 1933, as well as Rem. Rev. Stat., §§ 995-2, 995-3, and 995-5.

It may be stated here that in a good many of the cases the opinion does not specifically state whether the petition to modify was directed against the interlocutory order or the final decree of divorce, and our conclusion that a final decree was involved is based upon the language used and time when such a petition was filed.

And so in the above-cited case, we assume the petition to modify, having been filed long after the final decree of divorce was entered, was directed against the final decree.

We desire to first quote from the opinion in the *Ranken* case relative to Rem. 1915 Code, § 988:

"That statute contained no express provision for modification of divorce decrees. Nevertheless, during the time that the statute was in force, this court repeatedly held that, under its equitable powers, the court had continuing jurisdiction in divorce cases to modify the decree, *so long as there was a minor child, or children, whose maintenance and welfare was provided for in the decree. Poland v. Poland,* 63 Wash. 597, 116 Pac. 2; *Dyer v. Dyer,* 65 Wash. 535, 118 Pac. 634; *Ruge v. Ruge,* 97 Wash. 51, 165 Pac. 1063, L. R. A. 1917F, 721; *Delle v. Delle,* 112 Wash. 512, 192 Pac. 966, 193 Pac. 569.

"In each of those cases, the petition to modify the decree and the order of modification were made and filed in the original divorce action. However, in all of those cases, except in the *Ruge* case, provision had been made in the original decree for the custody or support, or for both custody and support, of a minor child, or children. In the *Ruge* case, there was no minor child of the marriage."

In the cited case no provision was made in either the interlocutory order or the final decree of divorce for the

custody, support, or education of the children; and relator contended that some provision for the maintenance and welfare of a minor child or children in the decree was essential to jurisdiction to modify the decree in those respects. The opinion continues:

"If our former cases on the subject, taken as a whole, particularly those to which reference has already been made, were our only guide to a pronouncement of a definite rule in such matters, we would be inclined to hold that, while the court, under its equity powers, has continuing jurisdiction in divorce cases to modify its decrees with respect to the custody and support of the minor children of the parties, the exercise of such power is nevertheless limited to those instances where the original decree had made some provision for custody or support, but that, where no such provision had been made, relief could be had only in an independent action. Those former cases, however, do not constitute our only guide to a determination of the rule applicable to the instant situation. In 1921 and 1933, amendments which bear directly on the issues before us were incorporated into the earlier divorce statute, quoted above. The statute now reads as follows: . . ."

Rem. Rev. Stat. (Sup.), § 988, is then quoted, the following words therein being italicized:

". . . *which order* [interlocutory order] *as to alimony and the care, support and education of children may be modified, altered and revised by the court from time to time as circumstances may require.*"

The opinion continues:

"Section 2 of the act of 1921, chapter 109, Laws of 1921, p. 332, Rem. Rev. Stat., § 988, contained provisions which were practically identical with § 1 of the 1933 act, above quoted, except that the 1921 act did not contain the clause which we have above italicized. The 1921 act also, by the incorporation of four new sections, Rem. Rev. Stat., §§ 995-2 to 995-5 (P. C. §§ 7511-2 to 7511-5), set up a procedure to be followed in changing or modifying any *final order, judgment, or decree* in relation to the care, custody, or control, or support and maintenance of a minor child, or children, of the marriage. One of those sections, Rem. Rev. Stat., § 995-3 (P. C. § 7511-3), provides: [the section is then quoted]

"Construing that section, this court held, in *McClelland v.*

*McClelland,* 163 Wash. 59, 299 Pac. 984, that the provision
for filing a certified copy of the decree sought to be modified
applied only in cases where proceedings for modification
were brought in a county other than the one wherein the
original decree of divorce had been obtained. The court
said:

" 'But, manifestly, this [the statute] can have no appli-
cation when the petition is filed *in the very court and action
wherein the decree is rendered.* It is inconceivable that the
legislature would contemplate the necessity of filing a certi-
fied copy of the decree *in the very court and action in which
the decree was rendered* and already of original record
therein. That is this case.' " (Italics ours.)

The opinion then proceeds to analyze Rem. Rev. Stat.
(Sup.), § 988, as follows:

"(1) *Pending* the action for the divorce, the court *may*
make and enforce such orders for the disposition of persons,
property, and children as may be deemed right and proper,
and such orders relative to the expenses of such action as
will insure to the wife an efficient preparation of her case,
and a fair and impartial trial thereof; (2) at the conclusion
of the trial, the court *must* make findings of fact and con-
clusions of law; (3) if either party is found to be entitled to
a divorce, an interlocutory order *must* be entered accord-
ingly; (4) such interlocutory order *shall* make all necessary
provisions as to alimony, costs, care, custody, support, and
education of the children, and as to custody, management,
and division of property; (5) the order as to alimony, and
the care, support, and education of children may be *modi-
fied, altered, and revised by the court from time to time as
circumstances may require;* (6) the order, however, as to
property rights shall be final and conclusive upon the part-
ies, subject only to the right of appeal."

The opinion continues:

"When Rem. Rev. Stat. (Sup.), § 988, as above quoted, is
read in connection with Rem. Rev. Stat., § 995-3, also above
quoted, and with our construction of the latter section, we
think it is plain that the legislature, by these two acts, in-
tended not only to confer upon the court in which an action
for divorce is brought *continuing jurisdiction in matters re-
lating to custody and support of minor children,* but also to
provide a complete, yet simple, procedure for modifying, al-
tering, and revising, at any time, all provisions relating to

the custody and support of minor children as changing circumstances might require. If there be any ambiguity in the wording of Rem. Rev. Stat. (Sup.) § 988, relative to modification of such provisions, we resolve that ambiguity in favor of the power of the court to order the modification in a proceeding brought in the original action." (Italics ours.)

While we appreciate the difference between the factual situations presented in the cited cases and those in the instant case, after a consideration of Rem. Rev. Stat. (Sup.), § 988, and Rem. Rev. Stat., §§ 995-2 to and including 995-5, and the cases decided by this court, including those cited herein, we are of the opinion the following rules may be announced relative to the modification or change of an interlocutory order or final decree of divorce, in so far as such order or final decree affects the custody, support, control, or maintenance of minor children of the parties:

(1) That the court wherein the interlocutory order was obtained has exclusive jurisdiction to modify, change, or alter such order, as circumstances may require, in so far as it affects the custody, control, support, or maintenance of minor children of the parties.

(2) That such exclusive jurisdiction continues until the entry of a final decree of divorce.

(3) That after the entry of the final decree of divorce the court which made and entered the final decree has continuing jurisdiction to modify or change such final decree as to the custody, support, or maintenance of minor children of the parties, as the changing conditions may require, having in mind the welfare of such minor children.

However, the legislature, in order to provide against possible hardships on the part of the parent to whom the custody of minor children has been awarded, by Rem. Rev. Stat., §§ 995-2 to 995-5, *supra,* provided that under certain conditions the hearing on a petition to modify or change the final decree be had in a county other than the one in which the final decree was entered. The conditions which must appear before a court other than the one which made and entered the final decree has jurisdiction to hear and determine a petition to modify or change a final decree of divorce

are (1) that the minor child or children affected or the parent or other person who has their care, custody, or control are residing in the county where the petition is filed; (2) that a petition complying with the provisions of Rem. Rev. Stat., § 995-3, is on file in the county where such parent or children reside; (3) that no court other than the one which made and entered the final decree of divorce acquire jurisdiction to hear and determine a petition to modify or change such decree until a petition is filed therein in accordance with § 995-3, *supra*, and then only for the purpose of determining the particular matters contained in such petition; (4) that, as stated in the *Shallenberger* case, *supra*, Rem. Rev. Stat., §§ 995-2 to 995-5, do not in any of their provisions take away from the court which entered the decree any of its continuing jurisdiction, or in any manner lessen its power to enforce its own judgment.

The basis of the complaint in the instant case is the claimed modification of the *interlocutory order* and the attempted enforcement of such modification. Assuming, then, for the sake of this argument, that the order of June 25, 1945, requiring relator to return the minor children to Spokane county and maintain them there until the further order of the court, did in fact modify the interlocutory order, still we are of the opinion that the superior court for Spokane county had jurisdiction to make and enter such an order under the provisions of Rem. Rev. Stat. (Sup.), § 988, and that it was the only court having jurisdiction so to do.

Being of the opinion that the superior court was not acting without or in excess of its jurisdiction in making and entering the order of June 25th, or in attempting to enforce such order by a show cause order citing relator to appear and show cause why she should not be punished for contempt for failure to comply with the order of June 25th, we conclude that the application for a writ of prohibition must be and it is denied.

BEALS, C. J., MILLARD, STEINERT, ROBINSON, and GRADY, JJ., concur.

SIMPSON, BLAKE, and MALLERY, JJ., concur in the result.