**WOODROW et al.**
v.
**EWING et al.**
No. 34428.

Supreme Court of Oklahoma.
Feb. 24, 1953.
As Amended Oct. 27, 1953.
Rehearing Denied Nov. 17, 1953.

Cook & Bingaman, H. H. Montgomery, and Geo. Bingaman, Guardian Ad Litem for minor plaintiffs in error, all of Purcell, for plaintiffs in error.

Hardin Ballard, Purcell, for defendants in error.

BLACKBIRD, Justice.

This action involves the title to a residence in Purcell, Oklahoma. The appeal herein has been perfected on behalf of the sons and daughters of Joe Cunningham and his deceased wife, Bessie. The premises was their family home for several years. Joe Cunningham first acquired it in 1936, but about two years later it was sold to the County at resale for delinquent paving assessments for the years 1928 to 1932, both inclusive. The deed to the County was filed of record on April 19, 1938. Thereafter, in June, 1943, Cunningham conveyed the property to his wife. Later in 1943, one L. T. Hine purchased the property from the County, obtaining a County Deed dated December 1, 1943, which in words and figures reads exactly the same as if said sale were based upon a resale to the County for ad valorem taxes. Thereafter, on February 25, 1944, Hine filed suit in Cause No. 7418 of the District Court to quiet title to the property on the basis of this deed, naming among other defendants, the County and its Board of County Commissioners, the City of Purcell and its Financial Secretary, and both Joe and Bessie Cunningham. Mr. and Mrs. Cunningham were defended in the case by their attorney Roy Glasco. Plaintiff Hine prevailed, however, and on November 16, 1944, obtained judgment quieting title

to the home in him. The next day, through what apparently was a sort of settlement or accord and satisfaction of the judgment, Hine, without ever having occupied the property, executed a quitclaim deed conveying all his right, title and interest in the property to Joe and Bessie Cunningham "As Joint Tenants And Not As Tenants In Common The Survivor To Take The Whole Upon The Death Of Either." Accordingly, no appeal was ever taken from the judgment. The Cunninghams and their children continued in possession of the home until Mrs. Cunningham died, June 29, 1946. Even then, Mr. Cunningham and at least some of the children continued to use the property as a home but he was away much of the time on extended trips and his younger children were cared for mostly by older ones. On February 25, 1949, Cunningham entered into a contract with defendants in error, Mr. and Mrs. Ewing, to sell the property to them. This sale transaction was consummated three days later when Mr. Cunningham delivered his deed to, and received from the Ewings all of the consideration of $3500 agreed upon, except $250 which, by agreement, was left in escrow to pay the expenses of perfecting the title by the present action, which was thereafter filed on March 5, 1949. According to Mr. Ewing's testimony at the trial, it was agreed by him and Cunningham, about the time the sale was closed, that the latter might continue to occupy the premises during the course of some repairs that the Ewings planned to make on the property.

Judgment was entered in this action quieting the Ewings' title, May 25, 1949. Joe Cunningham was neither a party to nor a witness in the action. His sons and daughters and the guardian ad litem of the younger ones will hereinafter be referred to as defendants and the Ewings as plaintiffs, as they appeared in the trial court.

In this appeal defendants argue three assignments of error. As two of them involve the related matters of title and possession and hinge to a greater or lesser degree upon the validity and effect of the hereinbefore mentioned judgment L. T. Hine obtained in Cause No. 7418 as a link in the property's chain of title, we will consider them first.

One of these propositions is that plaintiffs did not have the common law requirements of unity of time, title, interest, and possession necessary to create a joint tenancy. In their argument they refer back to the County deed upon the basis of which Mr. Hine commenced Cause No. 7418, and to a sale of the property for ad valorem taxes to one of the Cunningham's predecessors in title. They attempt in a rather involved and circuitous manner to demonstrate that Hine's joint tenancy deed to the Cunninghams after judgment for him in this prior quiet title action, could not have established a joint tenancy in his grantees, the Cunninghams, because Hine's interest was based upon a sale for delinquent paving assessments only, and was no more than coequal with the lien for ad valorem taxes that had already vested in Mrs. Cunningham through mesne conveyances, the last of which was her deed from Mr. Cunningham in 1943. If, as they say, Hine's deed to Joe and Bessie Cunningham could not have created in them a joint tenancy, then there is logical basis for defendants' conclusion that by plaintiffs' deed from Joe, they acquired only the one-third interest, that otherwise upon Bessie's death, intestate, would have descended to him as her surviving spouse, with the defendants, her surviving children, inheriting the other two-thirds interest. Of course, in taking this position, defendants have to attack the judgment in Cause No. 7418, purporting to quiet the entire fee simple title to the premises in L. T. Hine, grantor in the joint tenancy deed to the Cunninghams. Defendants contend that this judgment is void.

The Journal Entry of said judgment introduced in evidence in this case contains findings by the court that when Hine, plaintiff in that action, purchased his deed from the County he would not have bid the $1690 he paid for the property had he not been misled by a statement of the County Treasurer that the sale would operate to cancel delinquent ad valorem taxes as well as paving assessments. The court further found that by reason of this misrepresenta-

tion, Hine was entitled to have the sale cancelled and the purchase money returned, but that this could not be done because $778 of it had already been distributed to the paving bond holders, and the County Treasurer had only $910.82 left out of said proceeds. On the basis of these facts, the court then found that in order to do equity in the matter, title to the property should be quieted in Hine, subject to unpaid ad valorem taxes, and the County Treasurer should be required to return to Hine the above mentioned balance of the purchase money in his possession. The judgment did not in so many words purport to cancel or annul the County's sale to Hine, but otherwise, it was in accord with the above findings.

 Defendants argue that by this judgment the court in effect completely resold the property, fixed a new bid on it, and completely rearranged "this purported tax title and then rendered the inconsistent judgment that the purchase price be refunded"—that, in substance, Hine's deed was declared void and yet his title was quieted thereon. They cite 49 C.J.S., Judgments, § 48, pages 110, 111, for the propositions that: "A judgment is void for inconsistency where it grants relief both to plaintiff and to defendant on inconsistent grounds" and: "a valid judgment, inconsistent with his own allegations and admissions, cannot be rendered for a party." They also cite the cases of King v. Brockschmidt, 3 Mo.App. 571, and Algeo v. Algeo, Mo.App., 207 S.W. 842. This argument, though somewhat exaggerated in its representations concerning the purport of the decree, would be worthy of more serious consideration if made in a direct, rather than a collateral, attack upon the judgment involved, and, we can readily conceive of many hypothetical judgments that would be so inconsistent as to be utterly unenforcible and patently void. However, it is manifest that the judgment here attacked is not of the latter class, and we do not think its alleged inconsistency is of such a nature as to render it utterly void as distinguished from voidable. We have examined the above cases and others cited in the notes under the above

quotations from Corpus Juris Secundum and similar ones in Corpus Juris. We find, however, that in those cases the judgments were attacked directly in appeals therefrom, rather than in collateral or ancillary proceedings; and nowhere in those opinions do we find the courts saying that the judgments involved were void rather than merely defective or erroneous. There is a marked and well recognized difference between such degrees of defectiveness, especially where the judgment is collaterally attacked—the general rule being that the latter method of attack can be successful only where the judgment is void instead of only defective, voidable, or subject to being reversed or set aside in a proper proceeding. See discussions in Brown v. Trent, 36 Okl. 239, 128 P. 895; Pettis v. Johnston, 78 Okl. 277, 190 P. 681. As said in Freeman on Judgments (5th Ed.) Vol. 1, pp. 743 and 744:

"* * * If the court in rendering the judgment stays within the powers conferred upon it by law and does not transcend the jurisdiction it has acquired in the particular case, its decision, however erroneous, is at most voidable and not for that reason subject to challenge in an independent proceeding.

\* \* \* \* \* \*

"To say that a court is divested of its jurisdiction to decide matters properly brought before it, by deciding them erroneously, is to deny it the very power it is called upon to exercise.

"* * * Obviously the power to decide includes the power to decide wrong, and an erroneous decision is as binding as one that is correct, until set aside or corrected in a manner provided by law."

 Case No. 7418, being an action to quiet title, was a cause of equitable cognizance. The plaintiff therein asked that his title therein be quieted on a tax resale deed which appeared to be regular and valid on its face. Judging from the allegations of his petition as well as the court's finding, the circumstances and facts con-

cerning the tax sale proceedings which resulted in the issuance of his deed, and other phases of the case such as the plea of limitations, were brought out in the evidence and considered by the court. At least that must be presumed. The judgment, until properly set aside is conclusive not only as to all questions actually decided but also as to all germane issues that might have been litigated or availed of. Home Development Co. v. Hankins, 195 Okl. 632, 159 P.2d 1013; Cressler v. Brown, 79 Okl. 170, 192 P. 417, and see Terrell v. Gotcher, 197 Okl. 650, 174 P.2d 229. Assuming, without deciding, that on the basis of Hine's pleadings and proof, he was not entitled to the particular relief granted him by this judgment, yet his pleadings were sufficient to invoke the court's equitable powers which are very broad in scope and afford the granting of a wide variety of sometimes unprecedented relief. See Goldsmith v. Owens, 180 Okl. 268, 68 P.2d 849; 19 Am. Jur. 45, § 12. We are not prepared to say that in Cause No. 7418 the court lacked jurisdiction to grant relief in view of this wide scope and varied nature of its equitable powers, enabling it to find and administer a remedy where none existed at law and in all things to fully settle, once and for all, the various rights of the parties before it. See Vinson v. Oklahoma City, 179 Okl. 590, 66 P.2d 933, and Newbern v. Farris, 149 Okl. 74, 299 P. 192. Such a court may protect and give effect to the rights of one party while awarding relief to another, and it is not restrained or restricted by legal rights. 19 Am.Jur. 51. The judgment collaterally attacked here reflects a very real effort to do justice and equity and to place, at least some of the parties, in a position where they would not suffer an injustice by reason of the erroneous tax sale proceedings. Whether the court actually accomplished that result or not is not properly before us. If erroneous, its judgment must stand until corrected in some appropriate way. Home Development Co. v. Hankins, supra. As held in the cited case, the purpose of a quiet title action is to determine who is the real owner of the property and to put to rest all adverse claims.

Here, valuable property rights have vested, including those of plaintiffs, who were not parties to Cause No. 7418, and insofar as the record shows, had no notice of any infirmity in the judgment rendered therein (which in effect, was recognized and acceded to by Joe Cunningham and his wife when they accepted their joint deed from Hine) when they entered into the contract to purchase the property from Joe Cunningham, though the evidence (including references to the escrow agreement whereby a part of the purchase price was withheld to pay the costs of a quiet title action) indicates that before this contract was fully carried out, they became aware that Cunningham's children were opposing the sale and would probably make some sort of adverse claim.

█ Public policy and the interest of litigants, as well as the soundness and practicability of our system of property titles and jurisprudence all require that there be an end to litigation and that matters once finally determined in a court of competent jurisdiction be not relitigated in an interminable succession of other actions. See 30 Am.Jur. 910, § 165.

█ Nor do we find merit in defendants' proposition that the trial court erred in denying their request for a jury trial because the action was "possessory" in character. This is based upon evidence showing that for a long time prior to the commencement of this action at least a part of defendants had occupied the premises as a home and the requirement contained in Title 12 O.S.1941 § 556, that "Issues of fact arising in actions for the recovery * * * of specific real * * * property, shall be tried by a jury, unless a jury trial is waived * * *." Defendants' position here is based upon the false premise that their "occupation" was "possession" adverse to that of their father, plaintiffs' grantor. This could not have been, however. It has already been demonstrated that they had no color of title upon which to base adverse possession and their claimed right to possession or occupation had no foundation or entity separate and apart from that of their father who was still

the nominal head of their family, even though the evidence indicated that in his absence from the home after the mother's death and derelictions in his duties toward his children, he may have abdicated this position in some practical respects. In their pleadings plaintiffs did not seek ejectment but alleged their own possession and as hereinbefore indicated one of them testified that Cunningham was left in possession of the premises with the understanding that "he was to move at any time" plaintiffs "wanted him to during the repair of the house." Of course, this implied that he would take his family with him and completely vacate the premises, making the premises available to plaintiffs in its entirety. The trial court's judgment contains the following specific finding:

"That the plaintiffs through their grantor, and tenant, Joe Cunningham, were in the absolute and exclusive possession of the property involved herein at the time of the commencement of this action * * *."

Our statute, 12 O.S.1941, § 1141, allows a quiet title action to be brought "by any person in possession, by himself or tenant * * *." As the defendants' claim that they were in possession adversely to plaintiffs was, in its underlying aspects, a claim that the latter's deed was champertous, we think the burden was upon them to establish this, McGrath v. Eichhoff, 187 Okl. 64, 100 P.2d 880, and the court's above-quoted finding is to the effect that they did not discharge this burden. The court's judgment, as it bears upon this phase of the case, cannot be said to be clearly against the weight of the evidence, and, as above noted, is not contrary to law. Accordingly, under the rules governing appellate review in such cases, plaintiffs' possession through Cunningham, and, conversely, his offspring's lack of possession adverse to that, must be treated as an established fact. Johnson v. Rowe, 185 Okl. 60, 89 P.2d 955; Bruner v. Oswald, 72 Okl. 42, 178 P. 693. The conclusion follows that this is not a "possessory" action for which the statute, supra, required a jury trial. Evidence, that after the commencement of the action, Joe Cunningham departed from the home but left his children there, in no way alters this conclusion. Cunningham, being only a tenant or agent of plaintiffs, defendants' occupancy after his departure would not amount to "possession" of the premises as this term is distinguished from mere "occupancy." Nor did the circumstances of such departure and occupancy, if established, belie the allegation of plaintiffs' petition that they themselves were in possession. Nor would the question presented here be altered by considerations of whether defendants were members of Cunningham's household precisely at the time this action was commenced or did not begin to occupy the premises until later, or whether the furniture in the residence was Cunningham's, or whether plaintiffs had a telephone there, or whether plaintiffs knew that one or more of the children were living there, all of which are referred to in the testimony and defendants' brief.

Defendants next contend that the trial court erred in permitting Roy Glasco to testify that Mrs. Cunningham knew of the existence of the joint tenancy deed (by which she and her husband reacquired title to the property after being divested of it by the judgment in Cause No. 7418). In support of this contention they cite the statute forbidding an attorney to testify "concerning any communications made to him by his client * * *" 12 O.S.1941 § 385, but their counsel fails to show how this was a material issue in the case. Opposing counsel point out this failure and add that Glasco's testimony was only cumulative—that another witness's testimony was to the same effect. We agree with the latter position and conclude that if the admission of Mr. Glasco's testimony was error, it was harmless, and constitutes no ground for reversal.

As all specifications of error have been determined adversely to the defendants, the judgment of the trial court is hereby affirmed.

HALLEY, C. J., and JOHNSON, V. C. J., and CORN, ARNOLD and O'NEAL, JJ., concur.

WELCH, J., concurs in result.