**INDEPENDENT SCHOOL DISTRICT NUM-
BER 53 OF TEXAS COUNTY, Okla-
homa, Plaintiff in Error,**

v.

**INDEPENDENT SCHOOL DISTRICT NUM-
BER I–128 OF BEAVER COUNTY, Okla-
homa, and Tennie Luther, County Treasur-
er, Texas County, Oklahoma, Defendants
in Error.**

No. 43809.

Supreme Court of Oklahoma.

Aug. 31, 1970.

Rehearing Denied Sept. 25, 1970.

LaMar, Tryon, Sweet & Field, Guymon, and Gordon J. Quilter, Oklahoma City, for plaintiff in error.

Drum, Evans & Goetzinger, Beaver, for defendant in error, Independent School District Number I–128 of Beaver County, Oklahoma.

JACKSON, Justice.

The qualified electors of School District D–53, Texas County, Oklahoma, petitioned the County Superintendent of Schools of

Texas County for the annexation of D–53 to School District D–12 in Texas County. On May 5, 1969, the qualified electors of D–53 voted to annex their entire district to D–12. On May 6, 1969, the Superintendent of Schools ordered the annexation of D–53 to D–12. No appeal was taken from that order. However, on May 2, 1969, and prior to the annexation of D–53 to D–12 a majority of the qualified electors of D–12 filed a petition with the County Superintendent of Schools of Texas County for the annexation of D–12 to School District I–128 in Beaver County, Oklahoma. 70 O.S.Supp.1968, Section 7–1(a) provides that the territory comprising all of a school district may be annexed to an adjacent school district when approved at an annexation election called by the county superintendent of schools "in pursuance of a petition for annexation signed by a majority of the school district electors in the territory proposed to be annexed, hereinafter referred to as the area affected, as provided in this Section. * * * Such election shall be held within fifteen (15) days after the county superintendent of schools receives such petition." The County Superintendent of Schools undoubtedly took the view that on May 2, 1969, a majority of the qualified electors of D–12, being totally separate from any other district at that time, had authority to invoke his jurisdiction to call an election and that it was his mandatory duty to hold an election within fifteen days after receiving the petition. The election approving the annexation of D–12 to I–128 was held on May 17, 1969, and the county superintendent's order annexing D–12 to I–128 was entered on May 22, 1969. He did not count the votes of the electors in D–53.

In pursuance of the order annexing D–12 to I–128 the State Department of Education recognized the annexation of D–12 to I–128 and corrected its records and financing requirements accordingly. All of the real and personal property of (old) D–12 was transferred to I–128, except the County Treasurer of Texas County refused to transfer the school funds of D–12 to I–

128 without a court order. On application of the Board of Education of D–53 its designation was changed by the State Board of Education to Independent School District No. 53, effective June 16, 1969.

I–128 filed this action on August 8, 1969, praying for a mandatory order compelling the County Treasurer of Texas County to transfer the surplus funds of old D–12 to I–128. I–53 intervened contending that when the election and order annexing D–12 to I–128 were completed (May 17 and May 22, 1969) D–12 and D–53 constituted but one district; that the votes of the qualified electors of D–53 were not counted in the annexation election of D–12 to I–128, as required by the statute; and that since only a part of the district as then constituted (D–12 & D–53) was annexed to I–128, that I–53 was entitled to all of the property of old D–12 under the provisions of 70 O.S.1961, Sec. 7–4(c). I–128 contends that since *all* of D–12 was annexed to I–128, and no appeal was taken therefrom, 70 O.S.1961, Sec. 7–4(a) is applicable and that I–128 is entitled to all of the property and assets of old D–12.

70 O.S.Supp.1968, Section 7–1(d), provides:

"* * * Within ten (10) days after the order of the County Superintendent of Schools is made, twenty-five percent (25%) of the school district electors who were eligible to vote at the annexation election may appeal to the District Court of the county in which the territory proposed to be annexed, or the largest part thereof if such territory lies in more than one (1) county, is situated, and thereafter all proceedings shall be stayed until the District Court has rendered judgment. The proceedings shall have precedence over all other civil matters."

No appeal was taken from the county superintendent's order annexing D–12 to I–128, and his refusal to consider the votes of the electors in D–53 in that election. No statutory provision is made either for a direct or collateral attack upon an annexa-

tion proceeding after the appeal time has expired. In the instant case the intervenor, I–53, contends that it is entitled to the property and assets of old D–12.

We think this is a collateral attack upon the order of annexation which, without an appeal, became final ten days after the superintendent signed the annexation order on May 22, 1969.

In 49 C.J.S. Judgments § 401, it is said that a judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect of its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, except for fraud in its procurement.

In 49 C.J.S. Judgments § 409, it is said that a proceeding to enforce a judgment is collateral to the judgment, and no inquiry into its regularity or validity can be permitted in such a proceeding.

■ In the instant case at the time (May 2, 1969) the qualified electors of D–12 petitioned the county superintendent to call an election for annexing D–12 to I–128 it (D–12) was not a part of D–53. The qualified electors of D–12 therefore invoked the jurisdiction of the county superintendent to call an election. The county superintendent had jurisdiction to conduct the election. It may be that the qualified electors in D–53 had a right to have their votes counted in this election. However, they did not appeal from the order of the county superintendent refusing to count their votes as they might have done, and we are of the view that they may not now complain as intervenors in a collateral proceeding wherein I–128 seeks to recover the assets of old D–12.

■ Our attention is invited to Caddo Independent School District No. I–5 v. Sampson (1968), Okl., 447 P.2d 765, and Petitioners of School Dist. No. 112 of Kiowa County v. Linn (1942), 190 Okl. 187, 121 P.2d 608, for the proposition that the county superintendent did not have jurisdiction to call an election for annexing D–12 to I–128 while the prior annexation proceedings for annexing D–53 to D–12 was still pending. Those cases are not applicable to the facts presented in this case. In the first annexation proceeding in this case it was proposed to annex all of D–53 to D–12. D–53, under 70 O.S.Supp.1968, Sec. 7–1(a), was the "area affected." If the second annexation proceeding (D–12 to I–128) had involved any part of the "area affected" (D–53) then under the Caddo and Linn cases the county superintendent would not have had jurisdiction to call the election for a period of one year. D–12 was not within the area defined by the statute as "the area affected."

At the time I–53 intervened in this case all of the records and property of D–12 had been transferred to I–128, except the surplus funds in the County Treasurer's office. The District Court rendered its decision on August 20, 1969, and entered judgment in favor of I–128 giving that district all of the property of D–12, and ordered the County Treasurer to deliver to I–128 the surplus funds of D–12. Since that judgment was rendered the children in old D–12 have attended school in I–128 for a period of one year at the expense of I–128, and are ready to re-enroll.

Clearly, under the facts presented here the Legislature in allowing only 10 days for an appeal to the district court and giving annexation proceedings precedence in the District Court contemplated an orderly and speedy conclusion of litigation involving annexation proceedings.

We affirm the judgment of the trial court. It necessarily follows that the children in old D–12 will attend school in I–128.

IRWIN, C. J., and DAVISON, WILLIAMS, HODGES and McINERNEY, JJ., concur.

BERRY, V. C. J., and BLACKBIRD and LAVENDER, JJ., dissent.

**646**

BLACKBIRD, Justice (dissenting):

I dissent to the Majority Opinion for the reason that under the facts and record I think the opinion should be written as herein stated.

Previous to this litigation, one school district, hereinafter referred to as "D. 53", had been annexed to a second school district, hereinafter referred to as "D. 12", forming a new school district I will refer to as "I. 53", when the County Superintendent made an order annexing D. 12 to a third district, hereinafter referred to as "I. 128", pursuant to a petition filed before, and an election held after, the formation of I. 53, by the first annexation.

It is argued, on behalf of I. 53, that this second annexation, mandated in the election held the next day after expiration of the 10-day period within which an appeal to the District Court could have been (but was not) taken from the first annexation order, was in violation of 70 O.S.1963 Supp., § 7–1, which statutory provision was dealt with in Caddo Independent School District No. I–5 v. Sampson, Okl., 447 P.2d 765. The first arguments advanced for I. 128, in answer to this argument, are that I. 53 took no such position in the trial of the case and is therefore precluded from taking it here. The next answering argument is that in the first annexation, D. 12 was the district being annexed to, rather than the one being annexed, and therefore was not the "area affected", as that term is used in the cited Statute, thus rendering said Statute applicable to the second annexation *neither* under the above cited case, nor Independent Sch. Dist. Etc. v. Ind. Sch. Dist. Etc., Okl., 363 P.2d 835. The tenor of I. 128's further argument is that since D. 53's annexation to D. 12 had not yet been voted on, when the petition for D. 12's annexation to D. 128 was filed with the County Superintendent, there was nothing about the first annexation proceedings to interfere with, or preclude, the second annexation, i. e., the annexation of D. 12 to I. 128. Assuming, without deciding, this to be true, *the record shows that the election for the latter an-*

*nexation did not occur until the 10-day period for filing an appeal from the first annexation order had expired. Since no appeal was commenced during that period* —which is just the opposite of the situation in Independent Sch. Dist. Etc. v. Ind. Sch. Dist. Etc., supra—*nothing said in our opinion in that case casts any doubt upon the conclusion here, that, when on May 17, 1969, the election was held to annex D. 12 to I. 128, D. 12 had already become a part of the larger combined district (later designated "I. 53") under the first annexation order of May 6th, which was then final, by reason of no appeal having been taken therefrom. And this conclusion constituted a sound basis for I. 53's position, at the trial, that since D. 12 was not then "an entire school district", the disputed funds belonged to it* under Title 70 O.S.1961, § 7–4(c). As that term is used in the cited Statute, D. 12 was the "area affected" in its annexation to D. 128. Said Statute reads:

> "In case *the area affected is not an entire school district, the district to which the annexation is made shall not* acquire any of the property or assets of the district from which the area affected is detached." (Emphasis added)

At the close of the trial, the court rendered judgment to the effect that the subject funds belong to I. 128, after finding that I. 53 had never acquired any interest in them, and that, following its annexation to D. 128, D. 12 had transferred to the new combined district, I. 128, all of its real estate, together with improvements thereon, including its school building, with furniture, fixtures, and equipment, as well as buses and school records, and that everything necessary to annex D. 12 to D. 128 "was completed". In his findings, the trial court specifically recognized that the second annexation attached to D. 128 only the territory that previously had been D. 12, but he further found that I. 53 had "sat idly by without making any attempt to appeal" said annexation. In his said judgment, the court also found that to construe the Okla-

homa Statutes as requested by I. 53 would reach a result that he refused to presume the Legislature ever intended.

*I would uphold I. 53's position in its present appeal from said judgment.* There has been no suggestion made here that the above quoted Statute is ambiguous or its meaning doubtful. It is only where a statute is ambiguous and its meaning is not clear, so that it is amenable to more than one interpretation or construction, that it is subject to interpretation by the courts. Hines v. Winters, Okl., 320 P.2d 1114 (2nd syll.). Even when a statute's constitutionality is challenged, it is not the court's function or prerogative to consider its propriety, desirability, wisdom, or practicality as a working proposition. See Breeden v. Nigh, Okl., 441 P.2d 981, 986, quoting Spearman v. Williams, Okl., 415 P.2d 597, and Application of Oklahoma Capitol Improvement Auth., Okl., 355 P.2d 1028.

In the brief filed on behalf of I. 128, it is claimed that it will suffer financial loss if not allowed to recoup from the D. 12 surplus funds the expenses it has incurred in schooling that former District's students since said District was annexed to it; *but no suggestion is made that Section 7–4(c), supra, is unconstitutional or that it conflicts with any other statute.* Therefore, I can only conclude that the trial court erred in rendering a judgment precluding said Statute's application to the facts of this case, even though it was his opinion that such application would bring about an inequitable or improper result. Said judgment should be reversed, and this cause remanded to the trial court with directions to set it aside and render a new judgment holding that the property and assets of the former Eureka Dependent School District No. 12 in Texas County ("D. 12") belong to, and are the property and assets of, the plaintiff in error herein, Independent School District Number 53 ("I. 53") of said County.

For the reasons above stated, I dissent.

I am authorized to state that LAVENDER, J., concurs in the foregoing views.