[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION REGARDING MOTION TO SET ASIDE AND VACATE,MOTION TO STAY ENFORCEMENT, AND MOTION TO ENFORCE
Joseph Brignolo has filed a motion to set aside and vacate a custody order entered by the Oklahoma court. He has also filed a motion to stay enforcement of that order. James Donald King, Jr. seeks to enforce the custody order entered by the Oklahoma court.
Many of the facts that give rise to the above motions are not in dispute and have been stipulated to by the parties. Those facts are as follows:
 1. The minor children of the marriage of NORA BRIGNOLO and JAMES DONALD KING, JR., EVAN KING a/k/a EVAN BRIGNOLO (born 11/3/83, aged 12) and JARED KING a/k/a JARED BRIGNOLO (born 8/25/86, aged 9) were born in Oklahoma and resided there with their parents until 1989.
 2. In 1989, the children and their mother moved to Texas.
 3. NORA BRIGNOLO and JAMES DONALD KING, JR. obtained an Oklahoma divorce on January 19, 1990. The decree incorporated . . . a "joint custody plan" agreed to by the parties. The plan provided that the parents share joint custody of the minor children, with primary physical custody in the mother. The father was entitled to visitation as mutually agreed in addition to two overnight visits each week.
***
 9. The Plaintiff mother married the Intervenor JOSEPH BRIGNOLO and relocated with the children to Redding, Connecticut in June, 1992.
 10. The Defendant father has lived in Oklahoma continuously since the divorce.
 11. The children have lived in Redding, Connecticut, continuously since June, 1992, with their mother (until her CT Page 8188 death on March 10, 1996) and stepfather, the Intervenor BRIGNOLO. They attend school here, are treated by physicians, dentists and therapists here, and participate in various religious and extracurricular activities here.
***
 13. The children's maternal grandparents, paternal grandmother and paternal aunt live in Oklahoma. Their maternal aunt lives in Connecticut and has shared a home with the children for the last three years. Another maternal aunt lives in Texas.
 14. On February 1, 1996, having learned that the Plaintiff Mother was terminally ill, the Defendant Father filed a Motion to Modify Custody in the Oklahoma court and named BRIGNOLO a Third Party Defendant [or in the alternate petition for declaration of custody].
 15. On February 16, 1996, BRIGNOLO brought a UCCJA action to this Court, claiming jurisdiction pursuant to the "emergency" provision of Conn. Gen. Stat. § 46b-93 (a)(3)(B).
 16. The Plaintiff Mother also brought a UCCJA action to this Court claiming emergency jurisdiction and filed a Motion to Dismiss the Motion to Modify in the Oklahoma Court.
 17. On February 23, 1996, the Oklahoma Court denied the Plaintiff Mother's Motion to Dismiss and awarded Temporary Custody of the children to MARLYN and TOM RONAN, then in Connecticut, "to provide for the best interest of the minor children until they return to Oklahoma . . . at the appropriate time, following the funeral of Nora Brignolo." MARLYN and TOM RONAN, the children's maternal grandparents, were not at the time parties to the Oklahoma action, nor is there any indication in the Order that they had requested custody of the children.
18. The Oklahoma Court found in relevant part:
 1. That this Court has jurisdiction and venue over the parties and the minor children in compliance with the Uniform Child Custody Jurisdiction Act. Okla. Stat. CT Page 8189 Tit. 43, Sec. 501 et seq.
 3. That the residence of the minor children is in Connecticut.
 4. That this Court finds that the natural father, James Donald King, the maternal grandparents, Tom and Marlyn Ronan, and the paternal grandmother, Barbara King, reside in the State of Oklahoma.
 6. That this Court finds that upon the death of the custodial parent the domicile of the children will be the State of Oklahoma.
 19. The Connecticut actions were denied for lack of "emergency" jurisdiction.
20. On March 10, 1996, the Plaintiff Mother died.
***
 23. BRIGNOLO did not appear in the Oklahoma Court with the children on March 27, 1996, although his counsel was present.
 24. On March 28, 1996, the Oklahoma Court issued a "Final Custody Order," finding "8. That this Court has jurisdiction and venue over the parties and the minor children . . . in compliance with the Uniform Child Custody Jurisdiction Act. Okla. Stat. Tit. 43, Sec. 501 et seq." (A copy of the Oklahoma version of the act is attached.)
 25. The Oklahoma Court awarded "final custody" of the minor children to the Defendant Father and maternal grandparents Marlyn and Tom Ronan, by then Intervenors. The Court reserved the right to "determine which of these individuals should be awarded the primary custody of the minor children at a later date."
 26. The Oklahoma Court also ordered, pursuant to the same finding, "that it is in the best interest of the children that they be immediately returned to the State of Oklahoma. . . ." No facts are recited in support of this finding. It does not CT Page 8190 appear from the Order that any investigation of the children's care has been undertaken or that any other evidence of their care in Connecticut was before the Court.
 27. The Oklahoma Court "further ordered, adjudged and decreed" that "Joseph Brignolo is injoined and prohibited from filing any further lawsuits affecting either custody, residence or best interest of the minor children except in this court."
 28. The minor children were not represented by counsel or guardian at litem in the Oklahoma proceedings.
 29. On April 3, 1996, BRIGNOLO caused a variety of Oklahoma orders, including the March 28, 1996 "Final Custody Order," to be filed in this Court pursuant to Conn. Gen. Stat. § 46b-71.
 30. On April 16, 1996, BRIGNOLO filed in this Court a Motion to Set Aside and Vacate the March 28, 1996 Oklahoma Order, claiming that Oklahoma lacks subject matter jurisdiction over the custody proceeding. A Show Cause hearing was scheduled for June 4, 1996.
***
 32. This Court consolidated the hearings and rescheduled them for May 23 and 24, 1996. This Court also requested Briefs from the parties and the undersigned, appointed as the children's Guardian ad litem by the Redding Probate Court, as to their mother's estate.
***
 36. No attorney or guardian ad litem for the children has been appointed in the Oklahoma proceeding.
 37. BRIGNOLO has appealed from the Oklahoma orders. That appeal is pending.
The court finds from the evidence presented that Joseph Brignolo raised the issue of the Oklahoma court having jurisdiction to enter a custody order at the Oklahoma hearing held on February 20, 1996, before the Honorable Thomas C. Gillert, District Judge, Tulsa County, Oklahoma. CT Page 8191
The court further finds from the evidence presented that the issue of jurisdiction was fully and fairly litigated in the February 20, 1996 Oklahoma proceeding.
The court also finds that all parties entered an appearance in the Oklahoma custody proceedings.
The third party intervenor filed a certified copy of the Oklahoma custody order in Connecticut pursuant to § 46b-71. The defendant has filed a certified copy of the Oklahoma custody order pursuant to § 46b-105 et seq.
Joseph Brignolo has filed an appeal of the Oklahoma order that granted custody of the two minor children to their natural father, James Donald King, Jr., and the maternal grandparents, Tom and Marlyn Ronan.
 A THE THIRD PARTY INTERVENOR JOSEPH BRIGNOLO'S MOTION TO STAY ENFORCEMENT AND THE DEFENDANT JAMES DONALD KING, JR.'S MOTION TO ENFORCE THE OKLAHOMA CUSTODY ORDER
The Connecticut enforcement of foreign matrimonial judgments provides in part as follows:
 Sec. 46b-70. Foreign matrimonial judgment defined. As used in sections 46b-70 to 46b-75, inclusive, "foreign matrimonial judgment" means any judgment, decree or order of a court of any state in the United States in an action for divorce, legal separation, annulment or dissolution of marriage, for the custody, care, education, visitation, maintenance or support of children or for alimony, support or the disposition of property of the parties to an existing or terminated marriage, in which both parties have entered an appearance.
 Sec. 46b-71. Filing of foreign matrimonial judgment; enforcement in this state. (a) Any party to an action in which a foreign matrimonial judgment has been rendered, shall file, with a certified copy of the foreign matrimonial judgment, in the court in this state in which enforcement of such judgment is sought, a certification that such judgment is final, has not been modified, altered, amended, set aside or CT Page 8192 vacated and that the enforcement of such judgment has not been stayed or suspended, and such certificate shall set forth the full name and last-known address of the other party to such judgment and the name and address of the court in the foreign state which rendered such judgment.
 (b) Such foreign matrimonial judgment shall become a judgment of the court of this state where it is filed and shall be enforced and otherwise treated in the same manner as a judgment of a court in this state; provided such foreign matrimonial judgment does not contravene the public policy of the state of Connecticut. A foreign matrimonial judgment so filed shall have the same effect and may be enforced or satisfied in the same manner as any like judgment of a court of this state and is subject to the same procedures for modifying, altering, amending, vacating, setting aside, staying
or suspending said judgment as a judgment of a court of this state; provided. in modifying, altering, amending, setting aside, vacating staying or suspending any such foreign matrimonial judgment in this state the substantive law of the foreign jurisdiction shall be controlling.
 Sec. 46b-73. Stay of enforcement; modifications; hearing.
 (a) If either party files an affidavit with the court that an appeal from the foreign matrimonial judgment is pending in the foreign state, or will be taken, or that a stay of execution has been granted, the court shall stay enforcement of the foreign matrimonial judgment until the appeal is concluded, the time for appeal expires or the stay of execution expires or is vacated.
 (b) If a party files an affidavit with the court that such foreign matrimonial judgment has been modified, altered or amended, the court shall enforce such foreign matrimonial judgment as modified, altered or amended.
 (c) Upon motion made to the court of this state in which the foreign matrimonial judgment has been filed, either party shall be entitled to a hearing on any disputed issue of fact or law concerning the enforceability of said judgment in this state, including any challenge to the jurisdiction of the court which rendered such foreign matrimonial judgment.
(Emphasis provided.) CT Page 8193
Section 46b-71 relates to the enforcement of a final foreign matrimonial judgment. The threshold question is whether the Oklahoma custody order which is under appeal is considered to be a final judgment under Oklahoma law. Two Oklahoma decisions discuss the issue of when a judgment is final under Oklahoma law. In Methvin v. Methvin,127 P.2d 186, 188 (1942), the Oklahoma court stated in part as follows:
 We pointed out further that the test of a final judgment is whether or not the court's jurisdiction has been exhausted as to matters decided and that there could be but one final judgment in any action. It was further pointed out that the fact that an execution may be issued on a judgment does not by any means determine the finality of such judgment. It is the general rule that a judgment is not final in the sense that it is conclusive upon the parties until the losing party has failed, within the time allowed by law to perfect his appeal, or having properly perfected his appeal, until the highest court whose decision is invoked be either party upholds the decision of the trial court.
In Wilks v. Wilks, 632 P.2d 759, 761-62 (Okla. 1981), the court stated in part as follows:
 Finality and effect are not parallel concepts. While the appeal is undecided, a judgment obviously lacks the attributes of finality, although it may be clothed with effect if it can be enforced while uncertainty continues to exist about the ultimate outcome of litigation. Our statutory regime firmly rejects the common-law rule which grants — ex lege — an automatic stay for as long as proceedings-in-error are pending. As a general rule in Oklahoma, although finality always is, the effectiveness of a judgment need not be, and most often is not, postponed by an appeal. Absent a clearly-expressed legislative command to the contrary, civil judgments are subject to immediate rather than postponed, enforcement while there is a pending appeal. In short, a non-final judgment can be, and most often is, at once effective. [Footnotes omitted.]
Oklahoma law, as is the case with Connecticut law, does not automatically stay the custody order entered in Oklahoma as a result of the appeal. While the custody order in Oklahoma is subject to immediate enforcement, as is many nonfinal judgments, and is at once effective, it is not a final judgment until the appeal is decided. CT Page 8194
The third party intervenor argues that § 46b-73 (a) mandates that a stay be entered without making any reference to § 46b-71 (b).
The defendant, James Donald King, Jr., argues that based on the language of § 46b-71 and Connecticut Practice Book 4046 that the Oklahoma custody orders are not stayed in Connecticut for enforcement purposes despite the appeal pending in Oklahoma, arguing that § 46b-71
clearly states that the foreign judgment should be tested in the same manner as a judgment of this state and is subject to the same procedures for staying said judgment as a judgment of this state.
In discussing statutory construction, the court in In re JuvenileAppeal, 195 Conn. 344, 365 (1985), stated in part as follows:
 When two statutes relate to the same subject matter every effort should be made to find a reasonable field for the operation of both statutes. . . . Where there is a reasonable field of operation for each statute which does not impinge on the domain of the other, it is the court's duty to give them concurrent effect.
This court holds that the stay of enforcement language of § 46b-73 is mandatory. This court also interprets the provision of § 46b-71 (b) that provides that the foreign matrimonial judgment is subject to the same procedure for vacating or staying as a judgment of a court of this state applies to those matrimonial judgments that are not under appeal in the foreign state. Where there is an appeal pending from a foreign judgment, § 46b-73 (a) would control the procedure for enforcing that judgment, rather than § 46b-71 (b). Accordingly, the motion for stay filed by the third party intervenor, Joseph Brignolo, is granted and the motion to enforce the Oklahoma judgment filed by the defendant, James Donald King, Jr., is not granted at this time and will not be acted upon until the appeal in Oklahoma is concluded.
In summary, for two reasons, this court grants the motion for stay filed by the third party intervenor: (1) the Oklahoma custody order is not a final judgment as required by § 46b-71 (a); and (2) § 46b-73 (a) mandates that a stay enter from the Oklahoma order until the appeal is concluded.
 B THE THIRD PARTY INTERVENOR JOSEPH BRIGNOLO'S MOTION TO VACATE THE OKLAHOMA CUSTODY ORDER
Joseph Brignolo argues that Oklahoma did not have jurisdiction to CT Page 8195 enter a custody order and seeks to have this court vacate that order. The issue is whether he can collaterally attack that order.
In Morabito v. Wachsman, 191 Conn. 92 (1983), the court stated at pages 96-99 in part as follows:
 On June 19, 1980, the plaintiff filed an action to enforce her 1972 Nevada judgment in Connecticut pursuant to General Statutes §§ 46b-70 through 46b-75, the Enforcement of Foreign Matrimonial Judgments Act. . . . On September 8, 1980, in a separate action in Connecticut, the plaintiff brought suit on the 1979 Nevada judgment and also brought suit in a second count for current support.
 The defendant here in Connecticut contested both actions on the Nevada judgments on the basis that the state of Nevada had no jurisdiction over him in 1971. The trial court examined the circumstances surrounding the 1971 divorce action and found that Nevada lacked personal jurisdiction over the defendant. Thus, the court held, the 1972 and 1979 Nevada judgments were void. The trial court erred, however, because the issue of jurisdiction was fully and fairly litigated in the 1972 Nevada proceedings. The defendant is barred from raising it anew in these collateral proceedings.
 "When a defendant appears in an action to object that the court has no jurisdiction over him and the court overrules the objection and renders judgment against him, the local law of the State where the judgment was rendered determines. subject to constitutional limitations, whether the parties are precluded from attacking the judgment collaterally on the ground that the court had no jurisdiction over the defendant."
1 Restatement (Second), Conflicts § 96. In conformity with this view, we look to Nevada law to determine whether the defendant, having already litigated in Nevada the question of Nevada's jurisdiction over him, may now collaterally attack the judgments on the basis of jurisdiction.
***
 Because the defendant would be precluded in Nevada from again litigating the question of jurisdiction in a collateral proceeding, whether or not that question had been rightly decided originally, he may not do so here.[4]
CT Page 8196
(Emphasis provided.)
This court looks to Oklahoma law, as to whether a party having already litigated the matter of whether Oklahoma had jurisdiction to render a custody decree may now collaterally attack the judgment on the basis of jurisdiction. In discussing the issue of collateral attack, the Oklahoma court in Woodrow v. Ewing, 263 P.2d 167, 171 (1953), stated in part as follows:
 There is a marked and well recognized difference between such degrees of defectiveness, especially where the judgment is collaterally attacked the general rule being that the latter method of attack can be successful only where the judgment is void instead of only defective, voidable, or subject to being reversed or set aside in a proper proceeding. See discussions in Brown v. Trent, 36 Okla. 239, 128 P. 895; Pettis v. Johnston, 78 Okla. 277, 190 P. 681. As said in Freeman on Judgments (5th Ed.) Vol. 1, pp. 743 and 744:
 "* * * If the court in rendering the judgment stays within the powers conferred upon it by law and does not transcend the jurisdiction it has acquired in the particular case, its decision, however erroneous, is at most voidable and not for that reason subject to challenge in an independent proceeding.
***
 "To say that a court is divested of its jurisdiction to decide matters properly brought before it, by deciding therm erroneously, is to deny it the very power it is called upon to exercise.
 "* * * Obviously the power to decide includes the power to decide wrong, and an erroneous decision is as binding as one that is correct, until set aside or corrected in a manner provided by law."
Further, in Independent S.D. NO. 53 v. Independent S.D. NO. I-128,474 P.2d 643, 645 (1970), the Oklahoma court stated in part as follows:
In 49 C.J.S. Judgments § 401, it is said that a judgment CT Page 8197 rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect of its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, except for fraud in its procurement.
 In 49 C.J.S. Judgments § 409, it is said that a proceeding to enforce a judgment is collateral to the judgment, and no inquiry into its regularity or validity can be permitted in such a proceeding.
This court concludes that under Oklahoma law a collateral attack cannot be made upon the custody decree rendered in Oklahoma. Accordingly, Brignolo is precluded from attacking the Oklahoma custody judgment collaterally in Connecticut on the alleged ground that the Oklahoma court had no jurisdiction to render the custody decree it rendered. Therefore, the motion to set aside and vacate is denied.
 C THE ISSUE OF THE APPLICABILITY OF THE FULL FAITH AND CREDIT CLAUSE TO CUSTODY ORDERS
The parties are in dispute as to whether the full faith and credit clause of Article IV, § 1 of the United States Constitution is applicable to custody orders. Counsel for the minor children, citing Thompson v.Thompson, 484 U.S. 174, 98 L.Ed.2d 512, 108 S.Ct. 513 (1988), argues that the full faith and credit clause does not apply to custody decrees. The court is not persuaded by that argument. The issue in Thompson was whether the Parental Kidnapping Prevention Act (28 U.S.C.S. § 1738A) furnishes an implied cause of action in federal court to determine which of two conflicting state custody determinations is valid. The Thompson court stated in part at pages 520-21, 525 as follows:
 At the time Congress passed the PKPA, custody orders held a peculiar status under the full faith and credit doctrine, which requires each State to give effect to the judicial proceedings of other States, see U.S. Const., Art. IV, § 1; 28 U.S.C. § 1738 [28 U.S.C.S. § 1738]. The anomaly traces to the fact that custody orders characteristically are subject to modification as required by the best interests of the child. As a consequence, some courts doubted whether custody orders were sufficiently "final" to trigger full faith and credit requirements, and this Court had declined expressly to settle CT Page 8198 the question. Even if custody orders were subject to full faith and credit requirements, the Full Faith and Credit Clause obliges States only to accord the same force to judgments as would be accorded by the courts of the State in which the judgment was entered. Because courts entering custody orders generally retain the power to modify them, courts in other States were no less entitled to change the terms of custody according to their own views of the child's best interest.
***
 In sum, the context, language, and history of the PKPA together make out a conclusive case against inferring a cause of action in federal court to determine which of two conflicting state custody decrees is valid. Against this impressive evidence, petitioner relies primarily on the argument that failure to infer a cause of action would render the PKPA nugatory. We note, as a preliminary response, that ultimate review remains available in this Court for truly intractable jurisdictional deadlocks. In addition, the unspoken presumption in petitioner's argument is that the States are either unable or unwilling to enforce the provisions of the Act. This is a presumption we are not prepared, and more importantly, Congress was not prepared, to indulge. State courts faithfully administer the Full Faith and Credit Clause every day; now that Congress has extended full faith and credit requirements to child custody orders, we can think of no reason why the courts' administration of federal law in custody disputes will be any less vigilant. Should state courts prove as obstinate as petitioner predicts, Congress may choose to revisit the issue. But any more radical approach to the problem will have to await further legislative action; we "will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." California v. Sierra Club, 451 U.S. 287, 297, 68 L.Ed.2d 101, 101 S.Ct. 1775
(1981). The judgment of the Court of Appeals is affirmed.
(Citations omitted; emphasis provided.)
In Freund v. Burns, 131 Conn. 380 (1944), the issue was whether full faith and credit should be given to a custody decree entered by the State of New York. The Freund court at pages 383, 385 and 386 stated in part as follows:
An order in a divorce proceeding granting the custody of a CT Page 8199 minor child of the parties to one or the other determines a relative status; 2 Beale, Conflict of Laws, § 120.13; and a judgment having such a result is ordinarily within the constitutional provision that full faith and credit must be given in each state to the judicial proceedings of every other state. Const. U.S. Art. IV, § 1; Morrill v. Morrill, 83 Conn. 479, 492, 77 A. 1. That requires, however, that a state shall give to the judgment of the sister state only the force and effect to which it is entitled in the state where it was rendered. Haddock v. Haddock, 201 U.S. 562, 567, 26 Sup. Ct. 525. If the courts of that state have authority at their discretion to modify the decree at any time, even in the absence of a change in circumstances, the courts of another state have a like power. Sistare v. Sistare, 218 U.S. 1, 17, 30 Sup. Ct. 682. If the courts of the state where the decree was rendered can modify it only upon proof that the circumstances have materially changed after the making of the order, the courts of another state can act upon such proof; Morrill v. Morrill,
supra; but unless there has been such a material change of circumstances they must give effect to the decree. . . .
***
 Apart from the constitutional provision, it is the duty of our courts to give effect to a properly rendered judgment of the courts of another state, and to regard as concluded any issues settled by that judgment. Willetts' Appeal, 50 Conn. 330, 340; Gildersleeve v. Gildersleeve, 88 Conn. 689, 695, 92 A. 684. The judgment of the New York court decided the issue as to the person entitled to the custody of the children upon the facts then in existence; and the trial court would be entitled, on common-law principles, to make a different disposition of the matter only if it appeared that there had been a material change in circumstances.
In Ogles v. Warren, 148 Conn. 255 (1961), the issue was whether the courts of Connecticut were bound to give a custody award made in a divorce action in another state which then had jurisdiction the same force and effect as it is entitled to in that state. The Ogles court at pages 257-58 stated in part as follows:
 The plaintiffs point out that the decree of the Florida court rendered in January, 1959, is entitled to full faith and credit in Connecticut. The courts of this state are bound to give to the judgment of the Florida court the same force and CT Page 8200 effect as it is entitled to in that state. U.S. Const. art. IV § 1; Freund v. Burns, 131 Conn. 380, 383, 40 A.2d 754.
This court finds that full faith and credit is recognized in Connecticut to custody decrees of another state.
The third party intervenor, Joseph Brignolo, seeks to have this court make an independent determination as to whether the Oklahoma court had jurisdiction to enter the custody order that it entered.
The third party intervenor, Joseph Brignolo, actively contested the issue of jurisdiction of the Oklahoma court to enter a custody order, and the judgment of that court is entitled to full faith and credit upon that question, subject to the outcome of the appeal. This court, therefore, declines to make any independent finding as to whether the Oklahoma court did have jurisdiction to render the decision it rendered.
This court's ruling, staying enforcement of the Oklahoma custody order, does not necessarily leave the issue of custody of the children pending the decision on the Oklahoma appeal in limbo. As was stated by the court in Nowell v. Nowell, 157 Conn. 470, 478-79 (1969):
 A Texas judgment which is pending appeal should not be given effect in another state because such a judgment is not final under Texas law. . . . Once the judgment of a Texas court has been upheld and the pendency of the case has ceased, the judgment then becomes final, and it can thereafter be pleaded as a bar to terminate another action. . . . The trial court was presented with two alternatives when the defendant's counsel produced an exemplified copy of the Texas judgment from which an appeal had been taken. One alternative was to continue the plaintiff's action with orders for temporary support and counsel fees until the Texas judgment became final. . . . By following this approach the court would have avoided the possibility of inconsistent judgments being rendered in different states. . . . The second alternative was to permit the plaintiff's action to proceed to judgment. When the Texas judgment eventually became final and if it was upheld on appeal, the defendant could thereafter make a motion to vacate the Connecticut judgment for separation and support. The trial court followed this second approach, and we do not consider it to be error.
This court recognizes that the Nowell decision was rendered in 1969, and that enforcement of the foreign matrimonial judgment statute was CT Page 8201 adopted in 1977. There is nothing in the provisions of § 46b-73 regarding the staying of enforcement of a foreign matrimonial judgment that prohibits this court from proceeding to hear the same custody issue decided by the Oklahoma court. Therefore, in the event any of the parties files a proper motion regarding custody or visitation of the children, this court will proceed to hear that matter, subject to whatever jurisdictional issues may be raised, and render whatever order is appropriate. In the event the Oklahoma judgment becomes final on appeal, then a motion can be made to vacate whatever order is entered by this court.
The issue of custody and/or visitation is referred to Family Services for evaluation and report. All parties are ordered to cooperate with Family Services.
Axelrod, J.